FILED
CLERK, U.S. DISTRICT COURT

JUN 21 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____RS_____ DEPUTY

NAME _Stanley Dan Reczko, III_

PRISON IDENTIFICATION/BOOKING NO. _45243112_

ADDRESS OR PLACE OF CONFINEMENT _USP Tucson, P.O. Box 24550_

_Tucson, AZ. 85734_

Note: If represented by an attorney, provide name, address, & telephone number. *It is your responsibility to notify the Clerk of Court in writing of any change of address.*

**NO FEE**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

_Stanley Dan Reczko, III_

FULL NAME OF MOVANT
(Include name under which you were convicted)

Petitioner.

CASE NUMBER:

CV **2:21-CV-05127-ODW**

To be supplied by the Clerk of the United States District Court

CR _- 07 - 01221 - GHK_

Criminal case under which sentence was imposed.

**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY 28 U.S.C § 2255**

## INSTRUCTIONS - READ CAREFULLY

This motion must be legibly handwritten or typewritten and signed by the movant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form. Where more room is needed to answer any questions use reverse side of sheet.

Additional pages are not permitted. No citation or authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

Upon receipt, your motion will be filed if it is in proper order. **NO FEE** is required with this motion

If you do not have the necessary funds for transcripts, counsel, appeal, and other costs connected with a motion of this type, you may request permission to proceed *in forma pauperis*, in which event you must execute the declaration on the last page, setting forth information establishing your inability to pay costs. If you wish to proceed *in forma pauperis*, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by different judges or divisions either in the same district or in a different district, you must file separate motions as to each judgment.

Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the motion you file seeking relief from any judgment of conviction.

When the motion is fully completed, the original and three (3) copies must be mailed to the Clerk of the United States District Court, whose address is 255 East Temple Street, Suite TS-134, Los Angeles, California 90012.

## MOTION

1. Name and location of court that entered judgment of conviction under attack: _U.S. District Court, Central District of California_

2. Date of judgment of conviction: _May 18, 2015_

3. Length of sentence: _Life plus 10 years_ Sentencing judge: _George H. King_

4. Nature of offense or offenses for which you were convicted: _18 U.S.C. § 2251 (c); § 2260 A_

5. What was your plea? *(check one)*

   ☒ Not guilty
   ☐ Guilty
   ☐ Nolo Contendere

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   _N/A_

6. Kind of trial: *(check one)*

   ☒ Jury
   ☐ Judge only

7. Did you testify at the trial?

   ☐ Yes   ☒ No

8. Did you appeal from the judgment of conviction?

   ☒ Yes   ☐ No

9. If you did appeal, answer the following:

   (a) Name of court ___*U.S. Court of Appeals Ninth Circuit*___

   (b) Result _____

   _____*Affirmed*_____

   (c) Date of result ___*June 29, 2020*___

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?

   ☑ Yes      ☐ No

11. If your answer to question number 10 was "yes," give the following information:

   (a) (1) Name of Court ___*Supreme Court of the U.S.*___

      (2) Nature of proceeding ___*Petition for Writ of Certiorari*___

      (3) Grounds raised ___*Violation of Party Presentation Principle*___

      (4) Did you receive an evidentiary hearing on your petition, application, or motion?

        ☐ Yes     ☑ No

      (5) Result ___*N/A*___

      (6) Date of result ___*N/A*___

   (b) (1) Name of Court ___*N/A*___

      (2) Nature of proceeding ___*N/A*___

      (3) Grounds raised ___*N/A*___

      (4) Did you receive an evidentiary hearing on your petition, application, or motion?

        ☐ Yes     ☑ No

      (5) Result ___*N/A*___

      (6) Date of result ___*N/A*___

   (c) (1) Name of Court ___*N/A*___   *N/A*

      (2) Nature of proceeding ___*N/A*___

      (3) Grounds raised ___*N/A*___

      (4) Did you receive an evidentiary hearing on your petition, application, or motion?

        ☐ Yes     ☑ No

(5) Result _____ *N/A* _____

_____

(6) Date of result _____ *N/A* _____

(d) Did you appeal, to an appellate federal court having jurisdiction, the results of action taken on any petition, application, or motion?

(1) First petition, etc.    ☐ Yes  ☑ No

(2) Second petition, etc.  ☐ Yes  ☑ No

(3) Third petition, etc.   ☐ Yes  ☑ No

(e) If you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not:

_____

_____

_____ *N/A* _____

_____

_____

_____

12. State concisely every ground on which you claim that you are being held unlawfully.

**CAUTION:** If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date. For your information, the following is a list of the most frequently raised grounds for relief in this type of proceeding. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds that you have, whether listed below or not. However, you should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of the grounds listed below for relief, you must allege facts in support of the grounds you select. The petition will be returned to you if you merely check (a) through (j) or any one or more of these grounds without alleging facts in support.

(a) Conviction obtained by plea of guilty that was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: _Under Kimmelman, trial counsel's failure to file a motion to dismiss for violation of 18 U.S.C. § 3161, et seq. is a deficient performance and caused prejudice under the Sixth Amendment._

Supporting facts (tell your story briefly without citing cases or law): _Please see, attached Affidavit and Memorandum of Law._

B. Ground two: _Under Kimmelman, trial counsel's failure to competently litigate the unreasonable seizure on July 2, 2007 is a deficient performance and caused prejudice under the Sixth Amendment._

Supporting facts (tell your story briefly without citing cases or law): _Please see, attached Affidavit and Memorandum of Law._

C. Ground three: _Under Kimmelman, trial counsel's failure to file a motion to dismiss under Renzi is a deficient performance and caused prejudice under the Sixth Amendment._

Supporting facts (tell your story briefly without citing cases or law): _Please see, attached Affidavit and Memorandum of Law._

D. Ground four: _Under Evitts, appellate counsel's failure to file an opening brief properly attacking the September 9, 2013 order is a deficient performance and caused prejudice under the Sixth Amendment._

Supporting facts (tell your story briefly without citing cases or law): _Please see, attached Affidavit and Memorandum of Law_

13. If any of the grounds listed in 12 A, B, C, or D were not previously presented, state briefly what grounds were not presented, and give your reasons for not presenting them: _N/A_

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?

☐ Yes   ☒ No

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At a preliminary hearing: _GERALD SALSEDA SBN: 157411_

(b) At arraignment and plea: _YOLANDA BARRERA SBN: 91582_

(c) At trial: _LARRY M. BAKMAN SBN: 88964_
_LISA M. BASSIS 87845 SBN DAVID J. KALOYINEDES SBN. 160368_

(d) At sentencing: _DAVID J. KALOYINEDES_

(e) On appeal: _VERNA WEFALD SBN: 127104_
_AOB & RB - ETHAN A. BALOGH_

(f) In any post-conviction proceeding: _ETHAN A. BALOGH 235 MONTGOMERY ST._
_SUITE 1070 SAN FRANCISCO, CA. 94104_

(g) On appeal from any adverse ruling in a post-conviction proceeding: _____
_ETHAN A. BALOGH_

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at approximately the same time?

☐ Yes    ☒ No

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

☐ Yes    ☒ No

(a) If so, give the name and location of the court that imposed sentence to be served in the future: _____
_N/A_

(b) Give the date and length of sentence to be served in the future: _N/A_

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed sentence to be served in the future?

☐ Yes    ☒ No

WHEREFORE, movant prays that the court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _JUNE 11, 2021_          _[signature]_
          Date                         Signature of Movant

...

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

STANLEY DAN RECZKO, III,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No. (Clerk To Supply)

EVIDENTIARY HEARING REQUESTED

PETITION FOR WRIT OF HABEAS CORPUS TO VACATE CONVICTIONS AND SENTENCE

The Petitioner, respectfully petitions the Court to issue a writ of habeas corpus that vacates his convictions and sentence under 28 U.S.C. Section 2255(a). In support thereof, petitioner incorporates by reference the attached Affidavit, Exhibits, and Memorandum of Law. Petitioner also respectfully requests that the Court schedule an evidentiary hearing on this petition under Section 2255(b) at the earliest opportunity available. Should the Court hold an evidentiary hearing, petitioner respectfully requests that experienced habeas corpus counsel be appointed to assist petitioner in preparation and execution of the hearing.

Wherefore petitioner prays that this Honorable Court grants this petition and the relief requested for the foregoing reasons.

Respectfully Submitted,

x_____     Date: 6 / 11 / 2021

Mr. Stanley Dan Rezcko, III

l

...
County of Pima

SS

State of Arizona

## AFFIDAVIT

I, Stanley Dan Reczko, III, am the Affiant. Under the penalty of perjury, 28 U.S.C. Section 1746, the affiant declares that the following facts and information are true and correct to the best of his knowledge:

1. On July 2, 2007, I was seized at a police station in Dumaguete City, Negros Oriental, Philippines by Robert Mosier, International Justice Mission, who identified himself as an "FBI agent". At that time, Mosier presented a Federal Bureau of Investigation badge/credentials to me showing he had been deputized by the FBI. My later review of publicly available records on Mosier show he was in fact deputized and maintained "FBI clearance" at the time of the seizure in July 2007. When Mosier seized me, no indictment nor affidavit accompanying an arrest warrant were presented to me or the Philippine authorities that witnessed the arrest, and I did not feel free to leave Mosier's physical custody over my natural body. *EXHIBITS 1 – 6*

2. Shortly thereafter, Mosier seized and searched my luggage from a hotel in the Philippines without my consent, and obtained physical evidence from it. At that time, no indictment nor search warrant were presented to me or the Philippine authorities that witnessed the seizure of my person (nor the hotel staff) and subsequent search of my personal property.

3. After being detained in the Philippines by Mosier for about 73 days, even after the Philippine authorities stated they could only hold me for 8 hours, on or about September 11, 2007, I was transported by Mosier to the United States. On September 12, 2007 (according to the internal public docket for Case No. 2:07-cr-01221-GHK-1), I was charged by a criminal complaint for allegedly violating 18 U.S.C. Section 2251(c) and Section 2260(a), respectively. ECF No. 1. *EXHIBITS 1 – 6*

4. According to the Complaint, "[o]n June 12 2007, Senior Special Agent Julian Briola informed the Philippine Immigration authorities that STANLEY DAN RECZKO, III, had a prior sexual felony conviction in the United States ... and was recently accused of having sexually exploited a local minor in Cebu." ECF No. 1, Page 10 of 11, Id. at 32. And "[o]n June 22, 2007, the Philippine Immigration Commissioner signed an order for the arrest of STANLEY DAN RECZKO, III." Id. at 33.

5. Further, "[o]n or about July 2, 2007, STANLEY DAN RECZKO, III, was apprehended by Philippine Immigration authorities in Dumaguete City." Id. at 34. Also, "[o]n or about August 17, 2007, Philippine Immigration Commissioner signed a summary deportation order of RECZKO back to the United States." Id. at 35. Lastly, "[o]n September 10, 2007, the American Citizen Services of the United States Embassy in Manila informed Senior Special Agent Dante Orate that STANLEY DAN RECZKO, III was scheduled to be deported from the Philippines to the United States on September 12, 2007." Id. at 36.

6. On November 2, 2007, I was charged by an indictment in the central district of California. The charges allege the offenses occurred in Los Angeles, California. ECF No. 14.

7. On November 5, 2007, I was arraigned before a Duty Magistrate and pled not guilty to all charges. ECF No. 21. Between November 5, 2007 and September 9, 2013, no motion to dismiss the indictment for violating the Extradition Act, 18 U.S.C. Section 3181, et seq., was filed by my appointed trial counsel; no motion to quash the July 2, 2007 arrest was filed by counsel; and no motion to dismiss the indictment for the United States' presentation of false evidence during the briefing on counsel's motion to suppress. ECF No. 21 - 626.

8. On April 15, 2011, counsel filed a motion to suppress evidence, ECF No. 261, that challenged the validity of the search of my luggage by the two agents at the hotel in the Philippines above stated, but the motion did not challenge the validity of the seizure of my natural body in the Philippines on July 2, 2007.

9. On August 1, 2013, a third party report regarding my competency to proceed pro se was filed. ECF No. 608.

10. On September 9, 2013, I began representing myself with standby counsel because I was getting no assistance

2

(withholding/manipulating discovery, actual conflict of interest between counsel and myself as well as counsel and co-counsel) from the previous two appointed trial counselors. ECF No. 626.

11. Since September 9, 2013 to present, trial counsel nor appellate counsel competently challenge the validity of the September 9, 2013 decision to allow me to proceed pro se based on Dr. Lisa Hope's Report. ECF No. 608 - Present.

12. On May 18, 2015, I was sentenced to life imprisonment plus 10 years. ECF No. 1138. On May 27, 2015, I timely filed a notice of appeal, and on June 23, 2015 appellate counsel was appointed by the Ninth Circuit.

13. On June 28, 2018, the second appointed appellate counsel filed an Opening Brief in the direct appeal. USCA ECF No. 47. That brief argued primarily, and most pertinently, that the record in this court was replete with evidence of a dysfunctional attorney-client relationship, and that as a result I was constructively denied counsel.

14. The opening brief above stated did not challenge the validity of Dr. Hope's competency report, this court's reliance on that report, the district court's application of the wrong legal standard for competency at the September 9, 2013 hearing. The brief merely argued that the extensive back and forth between myself and attorneys Bakman and Bassis as well as the extensive back and forth between Bakman and Bassis led to, and cumulatively deprived me of counsel.

15. On May 7, 2019, the United States filed its response brief in opposition to appellate counsel's brief, USCA ECF No. 81, and on September 13, 2019, appellate counsel filed a reply. USCA ECF No. 97. On February 10, 2020, the Ninth Circuit held oral arguments, USCA ECF No. 115, and on June 29, 2020, the Ninth Circuit affirmed this Court's May 18, 2015 judgment.

16. On September 11, 2020, appellate counsel filed a petition for rehearing en banc, USCA ECF No. 122, and on October 9, 2020, the Ninth Circuit denied rehearing. USCA ECF No. 123. On January 7, 2021, appellate counsel filed a petition for writ of certiorari in the Supreme Court of the United States, and in February 2021 that petition was denied.

YOUR AFFIANT FURTHER SAYETH NAUGHT,

x _____     Date: 6 / 11 / 2021

Mr. Stanley Dan Reczko, III

...

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

STANLEY DAN RECZKO, III,

Petitioner,

v.                                                    Case No. (Clerk To Supply)

UNITED STATES OF AMERICA,

Respondent.

## MEMORANDUM OF LAW

The Petitioner, respectfully submits this memorandum of law in support of the attached Petition For Writ of Habeas Corpus To Vacate Convictions and Sentence Under 28 U.S.C. Section 2255 as follows:

"[A]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland." Hinton v. Alabama, 571 U.S. 263, 274 (2014).

A violation of the Extradition Act, 18 U.S.C. Section 3181, et seq., is actionable under 42 U.S.C. Section 1983. Draper v. Coombs, 792 F.2d 915, 920 (9th Cir. 1986).

"[W]e hold that the due process principles announced in Brady and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant ... There is no principled reason why this bad faith requirement should not be applied to a suppression hearing." United States v. Barton, 995 F.2d 931, 935 (9th Cir. 1993).

"There can be no doubt that, if Vincent was in fact deprived of his Thorazine during trial and this deprivation rendered him incompetent to stand trial, he is entitled to have his conviction vacated." Vincent v. Louisiana, 83 LED 2d 939, 941 (1985).

"[T]he conviction of an accused person while he is legally incompetent violates due process," Pate v. Robinson, 383 U.S. 375, 378 (1966), and a petitioner is not barred from raising this issue by his failure to have challenged his competence at trial, Pate, supra, Id. at 384. See also, Drope v. Missouri, 420 U.S. 162 (1975); Dusky v. United States, 362 U.S. 402 (1960); Bishop v. United States, 350 U.S. 961 (1956).

Where a habeas petition sets forth "specific and detailed factual assertions" that, if true, would entitle the petitioner to relief, the Court must ensure the full development of the relevant facts. Machibroda v. United States, 368 U.S. 487, 496 (1962); Harris v. Nelson, 394 U.S. 286, 292, 300 (1969)("There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law").

"A seizure under the Fourth Amendment occurs only when a reasonable person would not feel free to leave or decline the officer's requests." Hernandez v. Skinner, 2020 U.S. App. LEXIS 25183, Id. at 12 n. 2 (9th Cir. 2020)(citing Brendlin v. California, 551 U.S. 249, 255 (2007)).

"The most convincing proof that the property was in the possession of the person or upon the premises at some remote time in the past will not justify a present invasion of privacy. There must be reasonable grounds for believing that the immediate search

4

for which authority is sought may be fruitful." Durham v. United States, 403 F.2d 190, 193 (9th Cir. 1968)(citing Sgro v. United States, 287 U.S. 206, 210 (1932)).

A Napue violation requires proving that (1) the evidence was actually false, (2) the government knew or should have known it was false, and (3) the testimony was material. United States v. Renzi, 769 F.3d 731, 751 (9th Cir. 2014).

To prevail on a claim that a district court violated due process by imposing a "sentence founded at least in part upon misinformation of constitutional magnitude," United States v. Tucker, 404 U.S. 443, 447 (1972), a defendant "must establish the challenged information is (1) false or unreliable, and (2) demonstrably made the basis for the sentence." United States v. Hill, 915 F.3d 669, 674 (9th Cir. 2019).

A Sixth Amendment claim of ineffective assistance of counsel may be premised upon an attorney's failure to competently litigate a motion exercising his client's Fourth Amendment rights. Such a claim must show that the motion would have been meritorious, and that as a result of counsel's failure to file and/or competently litigate that motion the defendant suffered actual prejudice, i.e., no reasonable juror would have found him guilty beyond a reasonable doubt absent the evidence sought to be excluded. Kimmelman v. Morrison, 477 U.S. 365, 385 (1986).

American citizens have a "fundamental" Fourth Amendment right to be free from unreasonable searches and seizures abroad. Reid v. Covert, 354 U.S. 1, 9 (1957).

Criminal defendants have a Sixth Amendment right to effective assistance of appellate counsel the same way they have the same right to effective of assistance of trial counsel. Evitts v. Lucey, 469 U.S. 387, 396 (1985).

ARGUMENT

Petitioner respectfully contends that under Kimmelman, supra, his trial counsel was unconstitutionally ineffective for failing to immediately file a motion to dismiss the indictment for the United States' violation of the Extradition Act, 18 U.S.C. Section 3181 et seq., a codified clarification of the Extradition Clause of the Constitution. Specifically, Sections 3183 and 3187 require that before petitioner is even seized abroad for extradition to the United States, there has to be an "indictment" or "affidavit" presented to the foreign authorities so they may execute a "provisional arrest". None of that process was followed whatsoever prior to the July 2, 2007 seizure. Such a failure to ahere to the prescribed process is grounds for immediate dismissal under Draper, supra. As Draper was a published "point of law" under Hinton, supra, counsel had a duty to file a motion to dismiss the indictment on the above stated grounds. Counsel's deficient performance above stated prejudiced petitioner under Kimmelman because that motion was clearly meritorious as no indictment nor affidavit was filed until September 2007 long after the initial seizure abroad occurred, and with the indictment dismissed, no reasonable juror could find petitioner guilty beyond a reasonable doubt of the charges because no jury can convict on charges that are dismissed as a matter of law. See, Paragraphs 1 - 8 of the attached Affidavit.

Furthermore, petitioner respectfully asserts that his trial counsel's performance was unconstitutionally deficient under Kimmelman in a second regard as counsel failed to properly litigate the unreasonable July 2, 2007 seizure in the Philippines under the applicable precedent, and that as a result petitioner was prejudiced. Such a motion would have been extremely meritorious because the Fourth Amendment applies to American citizens abroad and there was absolutely no indictment, arrest warrant, nor search warrant until over 73 days after the seizure and searches occurred and on July 2, 2007 petitioner was not "free to leave" the presence of Mosier. Also, the United States, through Immigration and Customs Enforcement ("ICE"), adopted that illegal seizure as its own in September 2007 upon the filing of the criminal complaint by ICE. Petitioner was prejudiced because had counsel properly litigated the Fourth Amendment claim regarding the July 2, 2007 seizure, the arrest would have been quashed, and all evidence obtained therefrom excluded as a matter of law. With that evidence excluded, no reasonable juror could have found petitioner guilty of the charged offenses beyond a reasonable doubt, because there would have been no evidence for the jury to consider. Kimmelman, supra, Id. at 385; see also Paragraphs 1 - 8 of the attached Affidavit.

However, during the course of the inadequate motion to suppress filed by trial counsel, in response to that motion, the government submitted clearly false evidence in violation of Renzi, supra, to try to justify the illegal search abroad. For a third time, petitioner's trial counsel was ineffective under Kimmelman for failing to file a motion to dismiss the indictment for presentation of false evidence in violation of the Fifth Amendment's due process clause, as interpreted by Renzi. Specifically, the United States submitted documents attempting to show that Mosier was some kind of independent actor not operating under the United States' authority. That evidence is clearly false per the attached Exhibits (International Justice Mission, "IJM" documents) as ICE adopted all of Mosier's activities abroad, the United States should have known that evidence was false because it had access to the same IJM documents petitioner's counsel had, and that evidence was presented to the court in the form of sworn pleadings against counsel's motion to suppress. That shows that the motion to dismiss under Renzi would have

5

been meritorious because all three Napure prongs would have been met. The prejudice, once again, is that with the charges dismissed, no reasonable juror could find petitioner guilty beyond a reasonable doubt of charges that are dismissed as a matter of law.   *EXHIBITS 1-5*

On direct appeal, petitioner's appellate counsel was highly ineffective for failing to properly litigate the absence of a Pate hearing and merely complaining that petitioner was "constructively denied counsel." Appellate counsel had a duty to put forth the most prevailing arguments available on the applicable points of law operative at the time of the appeal. Under Hinton, the controlling point of law governing petitioner's competency was Pate. The court did not conduct a Pate hearing, and the bare bones report submitted by Dr. Hope was not sufficient to address petitioner's actual legal competency, as required by the due process clause. Petitioner's appellate counsel had an ample record and sufficient authority to challenge this Court's decision on September 9, 2013 on the merits of Dr. Hopes competency report under Pate to argue that the Court of Appeals should have vacated petitioner's sentence and convictions as well as the September 9, 2013 order that granted petitioner pro se status, and remanded the case for further proceedings with instructions to have a proper competency report provided and a Pate hearing held at the earliest opportunity available.

Appellate counsel's deficient performance above stated prejudiced petitioner because appellate counsel's opening brief and reply brief merely amounted to a dossier complaining about the several years of dysfunctional counsel (although significant) rather than arguing the due process claim against the September 9, 2013 order which would have given the court of appeals a much stronger legal and factual foundation to vacate the judgment and send the case back for further proceedings. Instead, it was as though appellate counsel subliminally argued ineffective assistance of counsel on direct appeal without tying that claim down to a viable reversible error of law. Had appellate counsel made the appropriate Pate argument on appeal, there is a strong likelihood that the court of appeals, after holding oral argument, would have vacated the judgment which means petitioner would not have been convicted or sentenced in violation of federal criminal statutes, i.e., the outcome would have been different.

## CONCLUSION

Wherefore petitioner prays that this Honorable Court grants this petition and the relief requested for the above stated and foregoing reasons.

Respectfully Submitted,

X _____     Date: 6 | 11 | 2021

STANLEY DAN RECZKO, III

6

████████████

12389 Cold Stream Guard Court Bristow, Virginia 20136 / +1 (571)-233-4458(m) +1 (703) 393-1071(h)
Virginia Certified Law Enforcement Officer
Active Top Secret Security Clearance issued by the Federal Bureau of Investigations

**OBJECTIVE:**

By utilizing my Education and Extensive Experience having a broad background in Law
Enforcement Administration and Command Operations serve the Students and Faculty of
Northern Virginia Community College through Excellence in Supervision, Financial Planning,
and Direction of Community Oriented Policing as the Chief of Police.

**EXPERIENCE:**

International Justice Mission                    January 1998 – October 2007
P.O. Box 58147
Washington, D.C.

*VICE PRESIDENT, DIRECTOR OF INVESTIGATIONS, Developing Countries Globally*

- Direct investigations of allegations of criminal activity in the form human rights abuses in the
  developing countries such as human trafficking in the form of child prostitution, public justice
  corruption, state-supported discrimination or abuse of ethnic minorities.
- Direct development of the IJM's investigative personnel resources, international investigative
  networks, and information systems; including the provision of training in investigative
  strategies, procedures, techniques, and security procedures.
- Develop and direct law enforcement training initiatives, introducing democratic / community
  styles of policing with an emphasis on proactive investigations and responses to criminal
  activity.
- Develop and implement department cost saving budget strategies in connection with a 7.9
  million dollar budget.

United Nations Mission in Bosnia and Herzegovina          October 1996 – November 1997
International Police Task Force
VSAT communications 155-5882

*STATION COMMANDER, Zvornik, Republika of Srpska, Bosnia.*

- Managed, supervised civilian and sworn personnel from 38 nations; this area of responsibility
  encompassed approximately 70,000 residents with over 30,000 internally displaced persons.
- Evaluated and assessed threats to public order; made recommendations to the international
  community.
- Ensured compliance with policing standards in order to maintain a safe environment for
  mission personnel and civilian ethnic populations.
- Monitored and trained local police, introducing them to Western democratic styles of
  policing.
- Executed a multi-million dollar budget.

Fauquier County Sheriff's Office                February 1988 - October 1996
78 West Lee Street
Warrenton, Virginia.

IJM Protected

IJM0095

EXHIBIT (1 of 5)

COMMANDER, Patrol Operations
- Directed sworn and civilian personnel in the administration of all law enforcement activities in a 660 square mile jurisdiction with an approximate population of 55,000 residents.
- Developed and implemented community policing programs utilizing mandated budgets.

COMMANDER, Criminal Investigations Division
- Supervised sworn and civilian personnel in the administration of all criminal investigative activities.
- Identified and apprehended criminal elements with regard to all FBI Part I offenses including Murder, Rape, Robbery, Arson, Burglary, Motor Vehicle Theft, Aggravated Assault, Larceny; specific Part II notable narcotic offenses.
- Coordinated sensitive investigations involving various agencies at the local, state and federal level.

ASSISTANT DIVISION COMMANDER, Criminal Investigations Division
- Supervised investigators assigned to criminal cases.
- Conducted sensitive internal investigations.

INVESTIGATOR, Criminal Investigations Division
- Conducted assigned investigations and prepared reports necessary for case prosecution with concentration in the areas of homicide and sexual assault cases.

DEPUTY SHERIFF, Patrol Operations Division
- Executed traffic patrol functions, conducted criminal investigations and presented testimony for court cases.

SPECIAL OPERATIONS:
COMMANDER, Sheriff's Emergency Response Team, 8/94 - 10/96
- Expedited safe deployment and neutralization of high-risk situations.
- Ordered tactical responses based on threat analysis and assessment, including Hostage Negotiation.
- Implemented and developed tactical training programs for Special Enforcement Operations.
- Planned budgets for equipment purchase and replacement.


EXPERIENCE CONTINUED:
Fauquier County Sheriff's Office


ASST. TEAM COMMANDER, Sheriff's Emergency Response Team, 10/93-8/94
- Developed Emergency Assault Plans and Tactical Deployment to manage and diffuse high-risk situations.

TEAM MEMBER, Sheriff's Emergency Response Team, 6/88-10/93


City Of Manassas Park Police Department
Manassas Park, Virginia                              August 1983 - February 1988

POLICE OFFICER
- Performed basic patrol operations, traffic enforcement, criminal investigations, prepared reports necessary for case prosecution and presented testimony for court cases.

RADIO DISPATCHER
- Performed basic functions as Radio Communications Operator

IJM Protected

IJM0096

Defendant's Motion to Suppress DER 38

EXHIBIT (2 OF 5)

IJM RESTRICTED      **INTERNATIONAL JUSTICE MISSION**      IJM RESTRICTED
**FOLLOW-UP REPORT**

Republic of the Philippines, Cebu OFP          Report Number: 07-PHC-003

| Project Lantern Data | | | | | | |
|---|---|---|---|---|---|---|
| What was the total number of persons *not* affiliated with a commercial sex establishment but were offering minor sex-trafficking victims? | | | | | | |
| In how many instances did the facilitator, victim, or commercial sex worker cite law enforcement as a reason minors were not available? | | | | | | |
| How many sex-trafficking perpetrators were identified? | | | | | | |
| How many sex-trafficking arrests were made? | | | | | | |

| Establishment | Type | Number of minor victims | Number of adult victims | Total number of sex workers | Sex act Offered | Price |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Establishment | Security (list all security measures in place for each establishment) | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

**Narrative:**

On Sunday July 01, 2007, IJM Investigator Mark ALBO notified me of a possible lead on the whereabouts of Suspect Stanley D. RECZKO. It was suspected that RECZKO was now staying in a hotel in Dumaguete City, Negros. I asked Investigator ALBO and IJM Investigator Lisa BALDADO to go to there and confirm the report if possible.

By late Sunday evening, ALBO and BALDADO notified me that they had located RECZKO. They continued their surveillance at the hotel.

On Monday, July 02, 2007 at approximately 0730, I notified Bureau of Immigrations Intelligence Officer Dino S. MONTOR by phone that we had located RECZKO. I provided him with very little information and asked him to meet me at the IJM Cebu office. He arrived at 0830 hours and I explained what we had learned.

Investigative Assistant Ana BUNGCARAS called PSupt Dionardo CARLO, PNP Chief of Dumaguete City. I asked Officer MONTOR to speak with him while we faxed the Bureau of Immigration mission order to the Chief authorizing RECZKO's arrest. MONTOR agreed and we immediately faxed the order to Chief CARLO.

At approximately 1000 hours, ALBO notified me by phone that RECZKO was in custody.

According to Chief CARLO, he could hold RECZKO for a maximum of 8 hours. If the Bureau of Immigrations did not take custody of him by then, he would have to release him.

VP MOSIER and I immediately left for Dumaguete City with Officer MONTOR and 2 other Bureau of Immigrations Officers. We arrived at the Dumaguete PNP office at approximately 1615 hours. RECZKO was being held inside an upstairs office.

As RECZKO was being transferred to the custody of Immigrations, I inquired about his mobile phone. PNP PO3 Liberato D. FAELOGO (DOB 03-15-66) handed me RECZKO's phone and what appeared to be a shredded plastic

| IJM Employee: | Daryl T. PURVIANCE, DOI | Signature: | | Date: | 07-05-2007 |
|---|---|---|---|---|---|
| Approved: | Daryl T. PURVIANCE, DOI | Signature: | | Date: | 07-05-2007 |

IJM Cebu OFP
Follow-Up Report – Page 1 of 2          IJM RESTRICTED

IJM Protected             IJM0715

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
011762

EXHIBIT (3 of 5)

IJM RESTRICTED     **INTERNATIONAL JUSTICE MISSION**     IJM RESTRICTED
**PRELIMINARY REPORT**

| COUNTRY: Republic of the Philippines | | | | | | Incident Number: | | 07-PHC-003 |
|---|---|---|---|---|---|---|---|---|
| Incident Type: | Rape of a Child in Violation of the U.S. Protect Act, 2003 | | | | | Code: | | |
| Incident Date: | December 6, 2005 to May 10, 2007 | | | | | Incident Time: | | |
| Incident Location: | Suba, Pasil, Cebu City, Cebu Philippines | | | | | Grid: | | See Narrative |
| **COMPLAINANT** | SUCIO, Annie | | | | | | | |
| Address: | Department of Social and Welfare Services (DSWS) | | | | | Ethnicity: | | Filipino |
| | Barangay Labangon, Cebu City, Cebu Philippines | | | Tel: | +63.32.262.5163 | DOB/Age: | | 10/31/1966 |
| **VICTIM 1** | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | | | | | |
| Address: | Block #3 Missionary Street, Suba, Pasil | | | | | Ethnicity: | | Filipino |
| | | | | Tel: | ▮▮▮ | DOB/Age: | | ▮▮▮ |
| Injuries: | See Narrative | | | | | | | |
| **VICTIM 2** | N/A | | | | | | | |
| Address: | | | | | | Ethnicity: | | |
| | | | | Tel: | | DOB/Age: | | |
| Injuries: | | | | | | | | |
| **SUSPECT 1** | RECZKO, Stanley "Dan" | | | | | | | |
| Address: | Mike & Tess Apartelle, Door #1, Salvador Extension | | | | | Ethnicity: | | Caucasian |
| | Labangon, Cebu City, Cebu Philippines 6000 | | | Tel: | +63.916.949.5838 | DOB/Age: | | 10/20/1964 |
| Sex: | Male | Race: | White | Facial Hair: | Mustache | | | |
| Hair Color: | Light Brown | Height: | 6'01" | Glasses: | None seen | | | |
| Clothing: | | Weight: | 225 lbs. | Build: | Medium-Heavy | | | |
| Description: | Tattoos – Chinese letters on chest, | | | | | | | |
| **SUSPECT 2** | N/A | | | | | | | |
| Address: | | | | | | Ethnicity: | | |
| | | | | Tel: | | DOB/Age: | | |
| Sex: | | Race: | | Facial Hair: | | | | |
| Hair Color: | | Height: | | Glasses: | | | | |
| Clothing: | | Weight: | | Build: | | | | |
| Description: | | | | | | | | |
| **WITNESS 1** | ▮▮▮▮▮ | | | | | | | |
| Address: | ▮▮▮▮▮▮▮▮▮▮ | | | | | Ethnicity: | | Filipino |
| | ▮▮▮▮▮▮▮ | | | Tel: | ▮▮▮ | DOB/Age: | | ▮▮▮ |
| **WITNESS 2** | ▮▮▮ | | | | | | | |
| Address: | ▮▮▮▮▮▮▮ | | | | | Ethnicity: | | Filipino |
| | | | | Tel: | ▮▮▮ | DOB/Age: | | ▮▮▮ |
| **WITNESS 3** | ▮▮▮ | | | | | | | |
| Address: | ▮▮▮▮ | | | | | Ethnicity: | | Filipino |
| | | | | Tel: | ▮▮▮ | DOB/Age: | | ▮▮▮ |
| | | | | | | | | |
| IJM Employee: | L. BALDADO, Investigator | | Signature: | *(signature)* | | | Date: | 05/24/2007 |
| Approved: | D. PURVIANCE, DOI | | Signature: | *(signature)* | | | Date: | 6/21/07 |

IJM Cebu OFP
Preliminary Report – Page 1 of 12     IJM RESTRICTED

IJM0002

Defendant's Motion to Suppress DER 1     IJM Protected

EXHIBIT (4 of 5)

IJM RESTRICTED                                                      Incident Number: 07-PHC-003

| Project Lantern Data | | | | | | | |
|---|---|---|---|---|---|---|---|
| What was the total number of persons *not* affiliated with a commercial sex establishment but were offering minor sex-trafficking victims? | | | | | | | 0 |
| In how many instances did the facilitator, victim, or commercial sex worker cite law enforcement as a reason minors were not available? | | | | | | | 0 |
| How many sex-trafficking perpetrators were identified? | | | | | | | 1 |
| How many sex-trafficking arrests were made? | | | | | | | 0 |

| Establishment | Type | Number of minor victims | Number of adult victims | Total number of sex-workers | Sex-act Offered | | Price |
|---|---|---|---|---|---|---|---|
| N/A | | 1 | | | | | N/A |

| Establishment | Security (list all security measures in place for each establishment) | | |
|---|---|---|---|
| N/A | | | |

| Authorities Notified: | | Agencies Notified | | | | |
|---|---|---|---|---|---|---|
| Name of Official: | Special Agent Julian S. BRIOLA | UNICEF | | ICRC | ILO | |
| Rank of Official: | Senior Special Agent | UNESCO | | WHO | WTO | |
| Date & Time Notified: | 05/11/2007 1400 hours | OECD | | Other: | X | U.S. ICE |
| Name of Local Station: | U.S. Embassy, Manila | Chief of Police: | | | | |
| Organization: | U.S. Immigration and Customs Enforcement | National | | Local | Other | X |

"U.S." REFERRAL

IJM Action Taken:

1. Investigations Team (accepted the case) referral.
2. Aftercare and Investigations Teams interviewed Victim ████████
3. Aftercare and Investigations Teams re-located Victim ████████ to a safe house
4. Investigations Team conducted a criminal investigation
5. Legal Team drafted case correspondence and provided legal consultation to the Investigations Team
6. Investigations Team notified, gained the support of, and mobilized the U.S. Immigrations and Customs Enforcement (ICE), Manila, to act on behalf of Victim ████████
7. Investigations Team turned all evidence items over the custody of U.S. ICE, Manila.

| Follow up Required? | Yes | | Non-compliance issues: (Please describe) | | |
|---|---|---|---|---|---|
| Assigned To: | L. BALDADO | | | | |
| Date: | 05/10/2007 | | | | |
| Other Reports Attached: | | | | | |
| Case Status: | Open | X | Inactive | | Closed |

| IJM Employee: | L. BALDADO, Investigator | Signature: | *Lbaldado* | Date: | 05/24/2007 |
|---|---|---|---|---|---|
| Approved: | D. PURVIANCE, DOI | Signature: | | Date: | |

IJM Cebu OFP
Preliminary Report - Page 2 of 12                    IJM RESTRICTED

Defendant's Motion to Suppress DER 2

IJM Protected
EXHIBIT (5 of 5)

JUNE 11, 2021

U.S. COURTHOUSE
ATTN: COURT CLERK
255 E. TEMPLE ST. TS-134
LOS ANGELES, CA.
                90012
(RE: ORIGINAL COPY OF 29 U.S.C. 2255
ATTACHED MOVANTS AFFIDAVIT, MEMORANDUM OF
LAW AND EXHIBITS 1-5)

CT CLERK;
        PLEASE FIND ENCLOSED AN ORIGINAL
OF MOVANTS (2255) FILING AND ATTACHMENTS
ABOVE.
        FURTHER ENCLOSED IS A COVER COPY
FIRST PAGE OF THE SAME TO BE STAMPED
FILED AND RETURNED TO MOVANT FOR HIS
RECORDS. SEE: ENCLOSED ENVELOPE ...
        IN CLOSING, MOVANT DID SEND A
COPY TO THE AUSA OFFICE PRESENTLY.
PLEASE NOTIFY OF ASSIGNED JUDGE ..

RESPECTFULLY SUBMITED

STANLEY D. RECZKO III

cc/ file.

STANLEY RECZKO 45243-112
UNITED STATES PENITENTARY.
P.O. BOX 24550          TUCSON
TUCSON ARIZONA
                    85734

U
A
U.
2
L

LEGAL MAIL

CERTIFIED MAIL

7021 0350 0002 0434 5314

RECEIVED
CLERK, U.S. DISTRICT COURT

JUN 21 2021

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY



UNITED STATES DISTRICT COURT
ATTN: COURT CLERK
UNITED STATES COURTHOUSE / ROYBOL BLDG.
255 EAST TEMPLE ST.; SUITE T-S-134
LOS ANGELES, CALIFORNIA

90012