TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B          ~~Rec 10-4-2021~~

---------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: Petitioner's Traverse In Opposition To Return
DATE: 09/27/2021 05:22:19 PM

*U.S. Penn Tucson*
*P.O. Box 24550*
*Tucson, AZ 85734*



FILED
CLERK, U.S. DISTRICT COURT

OCT - 4 2021

CENTRAL DISTRICT OF CALIFORNIA
BY /s/ ____ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

STANLEY DAN RECZKO, III,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No. 2:21-cv-5127-ODW

Honorable Otis D. Wright, II

*APPENDICIES A-Z ATTACHED*
*WITH EXHIBITS*

PETITIONER'S TRAVERSE IN OPPOSITION TO RESPONDENT'S RETURN
TO PETITION FOR WRIT OF HABEAS CORPUS TO VACATE CONVICTIONS
AND SENTENCE UNDER 28 U.S.C. SECTION 2255

---

The Petitioner, respectfully submits this traverse in opposition to the respondent's return ("the return"), [DE-14] in opposition to petitioner's petition for writ of habeas corpus to vacate convictions and sentence under 28 U.S.C. Section 2255 as follows:

STATEMENT OF THE UNDISPUTED FACTS

The return admits that petitioner's pretrial counsel failed to file a motion to dismiss the indictment under the Extradition Act, 18 U.S.C. Section 3183, 3187. [DE-14], Page 8, Id. 2-4.

The return admits that petitioner's pretrial counsel failed to file a motion to quash the unreasonable July 2, 2007 seizure and only challenged the search of petitioner's luggage stored at a hotel thereafter. [DE-14], Page 8, Id. at 7-8.

The return admits that petitioner's pretrial counsel failed to file a motion to dismiss for knowing presentation of false evidence during the briefing of the inadequate motion to suppress above stated. [DE-14], Page 8, Id. at 24-26

The return admits the United States induced, coerced, promoted, and/or encouraged the unreasonable seizure of petitioner's natural body on July 2, 2007 abroad, and subsequent searches of petitioner's luggage to obtain incriminating evidence, through its adoption of IJM's private actions by failing to deny the that Homeland Security Investigations agent Olga Sagalovich adopted IJM's actions in full through their incorporation into the criminal complaint. See, Criminal Docket Entry 1, Paragraphs 31 - 35. [DE-14], Page 12, Id. at 12-13; Id. at 23-25; and Page 13, Id. at 6 through Page 15, Id. at 16 (not one mention of the criminal complaint adopting all of IJM, Orate, and Briola's actions between May and July 2007)

The return admits that Sagalovich had knowledge of the incriminating disk prior to September 2007 (showing U.S. oversight, support, involvement, promotion, and encouragement) as she was searching for documents relating to the specific timeline of petitioner's travel between Los Angeles and the Philippines from January 2006 through September 2007. [DE-14], Page 20, Id. at 22 through Page 21, Id. at 1-5 ("she searched petitioner's luggage on his return to Los Angeles and founded a letter to the United Nations ... describing the timeline of travel between January 2006 through September 2007")

The return admits there was conflicting conclusions about petitioner's ability to represent himself, and that the standard used to determine if petitioner was mentally competent to stand trial was used to determine if petitioner was capable of representing himself. [DE-14], Page 16, n. 4 through Page 18, Id. at 1-9.

STATEMENT OF CONTRADICTING MATERIAL FACTS SUPPORTED BY APPENDICES A - Z

On May 15, 2007, International Justice Mission (IJM) agent Purviance wrote a letter to U.S. Immigration Customs

(1)

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

----------------------------------------------------------------------------------------------------

Enforcement (ICE) Special Agent Briola, asking to refer a case to the United States. More specifically, "we respectfully request your assistance in further investigating this incident and in facilitating the arrest and prosecution." See, Appendix A.

On May 18, 2007, IJM agent Purviance wrote a letter to Cebu Grand Hotel Operations Manager Ronaldo Puzon asking for all records and information pertaining to petitioner from "January 2005 to present", that there was an investigation under the "U.S. Protect Act", and that "all records and information supplied by you shall be endorsed to the United States Department of Homeland Security and the U.S. Department of Justice for evaluation and custody. See, Appendix B1 and B2.

On May 24, 2007, IJM filed an internal preliminary report showing the "Incident Type" was "in Violation of the U.S. Protect Act, 2003". See, Appendix C.

On January 10, 2008, IJM published on their official website, www.ijm.org, that "IJM worked closely with Philippine and U.S. authorities to locate the perpetrator under the auspices of the PROTECT Act, the U.S. law that makes sexual offenses, committed against minors abroad by American citizens punishable in U.S. courts." Appendix D.

On May 24, 2007, IJM filed an internal report showing "Authorities Notified" listing "Special Agent Julian S. BRIOLA, Senior Special Agent, 05/11/2007 1400 hours, U.S. Embassy Manila, U.S. Immigration and Customs Enforcement" and "IJM Action Taken" listing "6. Investigations Team notified, gained the support of, and mobilized the U.S. Immigration and Customs Enforcement (ICE), Manila, to act on behalf of Victim []. 7. Investigations Team turned all evidence over to the custody of U.S. ICE, Manila." See, Appendix E.

On or about June 1, 2007, Assistant U.S. Attorneys, John J. Lulejian and Christine C. Ewell, drafted and signed by their hand their initials on a fabricated, unsigned, unathuenticated, and unfiled indictment, presumably for the purpose of misleading Philippine authorities and/or a U.S. District Court into the belief that the Extradition Act, 18 U.S.C. Sections 3183, 3187, were being complied with. See, Appendix F.

On June 12, 2007, ICE agent Briola wrote a letter for ICE attache at Manila to the Philipine Commissioner of the Bureau of Immigration (BID) informing them of an ICE investigation of petitioner under the Child Protect Act abnd asking them "to act upon [the information] and as you deem appropriate." The letter further states that "Sr. Special Agent Julian Briola, who can be reached at, cell no. 0917-830-2336" as the "point of contact". See, Appendix G.

On June 20, 2007, BID attorney Edgardo I. Mendoza faxed correspondence to ICE Briola stating he forwarded Briola's June 12, 2007 letter, Appendix G, to the appropriate Philippine officials citing "Theodore C. Lopez, Deputy Immigration and Customs Enforcement Attache, U.S. Department of Homeland Security" regarding the case". See, Appendix H.

On June 22, 2007, a mission order was entered by the Philippine Bureau of Immigration (PBI) for strict compliance authorizing a "1. Conduct verification/validation on the admission status and activities of said foreign national and effect the immediate arrest if found to have violated the Philippine Immigration Act of 1940, as amended. 2. Valid for (7) days from date of approval [June 22, 2007-June 29, 2007]"(Petitioner was unreasonably seized on July 2, 2007). See, Appendix I.

On December 15, 2008, PBI published an internal memorandum order describing the Immigration Act of 1940, as amended by Amendment Order No. ADD-01-035 dated 22 August 2001. See Rule VII-a. Summary Deportation, presented solely for informational purposes and in the interests of completeness. See Appendix J.

On June 3, 2007, in Mandaue City Cebu, Philippines, a photograph was taken of petitioner the morning after the unreasonable July 2, 2007 seizure of his person by IJM. The photograph shows petitioner in handcuffs, in front of Geronimo Rosas, PBI Commissioner, with IJM Mosier (sunglasses) and IJM Purviance on both sides of petitioner. The hearing was for Extradition to the United States for the alleged violations of the U.S. Protect Act. Nothing was stated during that hearing about summary deportation, because the June 22, 2007 mission order had expired on June 29, 2007 and petitioner was being presented on July 3, 2007. See, Appendix K.

On July 3, 2007, in Manila, Philippines, after petitioner was flown by IJM agents Mosier and Purviance at the close of the above stated extradition hearing in Mandaue City Cebu earlier that day, petitioner was photographed without handcuffs in front of Edgardo I. Mendoza, BID attorney, being freed back into the Philippines without any violations being found to have occurred. However, petitioner was explaining that even though he was free to leave, IJM agents Mosier and Purviance had stolen all of petitioner's personal effects, U.S. passport, Philippine VISA, money, cell phones and that petitioner was destitute without those items. PBI called the U.S. Embassy in petitioner's presence, and spoke to ICE agent Briola who told PBI to place petitioner into custody because the U.S. was going to extradite. See, Appendix L.

(2)

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

On July 5, 2007, IJM filed an internal follow-up report stating "[a]t approximately 1000 hours [on July 2, 2007], ALBO notified me by phone that RECZKO was in custody. According to Chief CARLO[S], he could hold RECZKO for a maximum of 8 hours. If the Bureau of Immigrations did not take custody of him by then, he would have to release him. VP Mosier and I immediately left for Dumaguete City with officer MONTOR and 2 other Bureau of Immigrations Officers. We arrvied at the Dumaguete PNP office at approximately 1615 hours. RECZKO was being held inside an upstairs office." See, Appendix M.

On August 8, 2007, IJM agent Mosier wrote a letter to BID Commissioner Marcelino C Libanan stating "the US Department of Homeland Security had requested that RECZKO be deported from the Philippines." See, Appendix N1. Also on August 8, 2007, IJM agent Mosier wrote a letter to Philippine National Police Chief Oscar Castelo Calderon stating that Police Chief Carlos was "being notified that RECZKO was a fugitive". See, Appendix N2.

On August 17, 2008, the PBI entered a summary deportation order stating that petitioner was arrested "pursuant to Mission Order No. MCL 07-008 dated 22 June 2007 is a fugitive from justice in the United States of America". The Court should take judicial notice that the Mission Order No. MCL 07-008 is Appendix I above stated that was expired on June 29, 2007, three days before petitioner was unreasonably seized on July 2, 2007. See, Appendix O.

On April 12, 2013, the U.S. Department of Justice Office of International Affairs Criminal Division stated "The Deportation Order noted that he was charged with being an undesireable alien and with being a fugitive from justice on July 6, 2007." However, petitioner had a valid VISA, and no U.S. arrest warrant or indictment was ever presented. See, Appendix P.

On August 21, 2007, Assistant U.S. Attorney Alexandra Gelber, USDOJ in Washington, DC sent an email to ICE agent Dante Orate stating" they had enough evidence of child pornography for a life sentence'. See, Appendix Q.

con't

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: Petitioner's Traverse In Opposition to Return II
DATE: 09/28/2021 09:02:25 PM

...

   On September 10, 2007, ICE agent Orate emails U.S. State Department Jocelyn Tiongco that " as of this morning..We are still working on getting an arrest warrant."

   On September 11, 2007, Tiongco emails ICE Agent Orate that petitioner's "valid U.S. passport and Cathy Pacific Ticket were forwarded to the Bureau of Immigrations law and investigations division. At first, the BI was hesitant to receive the travel documents because of the information they received that subject was a Federal Fugitive." I informed Commissioner Libanan and Atty. Ty that we currently do not have an existing warrant for subject's arrest."

   On September 12, 2007, Tiangco emails to Orate that " I told him that DHS ICE only had in custody, was his U.S. passport which was turned over to the BID." see, Appendix R.

   The Court should take note that IJM provided petitioner's passport to ICE during the July 2, 2007 arrest along with items seized from petitioner's person to include cell phones, money, wallet, Philippine Visa and other forms of identification. On this same point in fact, ICE Dante Orate "pouched" petitioner's U.S. passport on his flight from Manila, Philippines through Hong Kong to the United States. See, Appendix R.

   On September 12, 2007, SA ICE, Olga Sagalovich filed the criminal complaint, which adopted all the preceding actions taken since May 10, 2007 by IJM and ICE Briola in the Philippines. On page 9, the complaint states "[o]n June 22, 2007 the Philippine Immigration Commissioner signed an order for the arrest of STANLEY DAN RECZKO, III. On July 2, 2007, STANLEY DAN RECZKO, III was apprehended by Philippine Immigration authorities in Dumaguete City, Negros Oriental, Philippines. Id. at Paragraphs 33-34.

   The complaint, in the above stated portion adopting the preceding acts, says nothing about IJM and/or ICE's involvement in the July 2, 2007 arrest and says nothing about the June 22, 2007 Mission Order's content to include the expiration on June 29, 2007. COMPARE: Appendix S, page 9, Id. at Paragraph's 33-34 WITH: Appendix I (requiring "verification/validation " before arrest which was "Valid for (7) days from the date of approval [June 22, 2007]). Yet, respondent says nothing about these material omissions of fact from the complaint, says nothing about the content of the mission order and pretends as though the U.S. had nothing to do with the July 2, 2007 false arrest whatsoever.

   On November 2, 2007, after petitioner was illegally extradited from the Philippines on September 12,2007, a real indictment was presented to a Grand Jury and returned with a case number, foreperson's signature and was filed on the public docket as Cr-07-01221-GHK. Compare: Appendix T (real indictment) WITH: Appendix F ( fabricated June 2007 indictment).

   In 2007, IJM received several hundreds of thousands of dollars in U.S. funding for the Reczko case under "Project Lantern". This shows U.S. promotion and encouragement of IJM's actions towards petitioner abroad. See, Appendix U, United States Treasury, Internal Revenue Service, Form 990 ( petitioner has only been able to retain the single 990 form, but is aware that a whole C.D. exists with accounting of all IJM's funding from the U.S. to include activities abroad and in the petitioners case).

   On January 26, 2009 at 3:45 pm, petitioner gave a 45 minute long detailed description of the July 2, 2007 false arrest in open court before former United States District Judge King, defense counselors and the respondent thereby preserving it on the record before he was pushed into self-representation for enforcing his discovery rights. Petitioner respectfully incorporates by reference the attached relevant section of the transcript proceedings, in their entirety. See Appendix V. Document 134, pages 6-13.

   On August 29, 2011, at a status conference Judge King asked Bakman and Bassis why they were filing motions to dismiss as motions in limine of trial. Bakman responds "Your Honor, if I might answer that. I think there's a dispute as to the legitimacy of that motion. As lead counsel, I have been loath to bring that motion. I don't believe it has merit. Mr. Reczko wants it brought. Ms. Bassis is willing to bring that. So I'm in a quandary. I think in order to avoid a 2255 down the road, I'm going to have Ms. Bassis file that motion. She'll be signing off on it. I will not." Appendix W - August 29, 2011 Transcript of Proceedings, Page 20, Id. at 14 - 22. Bakman's foresight about avoiding the instant petition is clear evidence of his intent to subvert petitioner's Fourth Amendment rights.

(4)

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

-------------------------------------------------------------------------------------------------------

On November 14, 2011, petitioner's former defense counsel, Lisa M. Bassis, filed a 'reply to government's opposition to defendant's amended motion to suppress all evidence seized by IJM and request for an evidentiary hearing', Document 328, which is also respectfully incorporated by reference, in its entirety. See Appendix X.

On September 25, 2012, a 'joint brief in support and in opposition to defendant's motion to suppress evidence seized by the international just mission', Document 441, Page 1 - 45, which is also respectfully incorporated by reference in its entirety at this time. Appendix Y (Emphasis Added In Re: Page 19, Id. 9 - 16 Extradition).

On February 2, 2015, an evidentiary hearing was held on the amended motion to suppress (after petitioner was pushed into representing himself to continue enforcing his discovery rights on September 9, 2013). Although the hearing was mishandled and completely one-sided (due to petitioner's inability to effectively represent himself), there is substantial evidence respondent knew Philippine National Police Chief Carlos would testify that the June 22, 2007 Mission Order was expired on July 2, 2007 and that absent Mission Order, no other authority existed to seize petitioner's person in the Philippines. Therefore, petitioner respectfully incorporates by reference the attached transcript of proceedings, in their entirety as well. See Appendix Z1.

For almost four years Judge King relied on Dr. Faerstein's specific clinical conclusions. Judge King adopted and stood behind Faerstein's conclusions about petitioner being able to cooperate in assisting with his defense, but not being able to proceed pro se no less than five times on the record:

On October 9, 2009, Judge King states: "Faerstein is of the view that Mr. Reczko is competent to stand trial but not competent to act as his own attorney." Document 1195, Page 5.

On October 9, 2009, Judge King states: "He's not representing himself. He cannot represent himself. He not sough to represent himself. Anyway, even if he did, he can't because the psychiatrists have made it clear that he's not competent to represent himself ... I don't really know that there's anything further that would be gained by us referring Mr. Reczko to yet another review by, let's say, Dr. Faerstein, because I'm not so sure that there would be any basis for any difference of opinion." See, Appendix Z2 Document 1206, Page 55, 58.

However, about 8 months later, after "the government consulted with Dr. Faerstein," Document 611, Page 1, and Ms. Bassis, Document 617, Page 6, Faerstein found this "difference of opinion", Appendix Z2 Document 1206, Page 58, that Judge King stated would be no basis for evaluating petitioner further. See also, Order, Document 216 ("[t]o the extent defendant wants to proceed in pro per, he must file a proper request to do so, including any showing under Edwards why is competent to represent himself, despite Dr. Faerstein's determinations to the contrary.")(emphasis added).

Dr. Hope's September 8, 2013 evaluation is in direct conflict with all of Faerstein's prior findings/conclusions. Judge King never ordered Faerstein to review Hope's bare bones report. Hope's report is a cryptic one sentence finding that petitioner was competent to represent himself at trial pro se. Hope's report only surfaced after the consultation with respondent and Bassis. This sudden, unsupported, and conclusory one sentence conclusion by Hope should have given Judge King significant pause in allowing petitioner to proceed pro se.

The decision allowing petitioner to proceed pro se cause the prejudice of petitioner's mishandling of the February 2, 2015 evidentiary hearing on the amended motion to suppress. Any time a specific conclusion is drawn for several years without wavering and that conclusion is suddenly up-ended, it should raise serious suspicion to any reasonable person. Here, appellate counsel's most prevailing argument for petitioner's direct appeal was to seek reversal of Judge King's September 9, 2013 order granting permission to proceed pro se, and vacating the proceedings thereafter based on the same 5.5 years of consistent evaluation and conclusions drawn by Faerstein, instead of the shoehorned Hope report.

## MEMORANDUM OF LAW AND ARGUMENT

"Police officers may not avoid the requirements of the Fourth Amendment by inducing, coercing, promoting, or encouraging private parties to perform searches they would not otherwise perform. See United States v. Reed, 15 F.3d 928, 932-33 (9th Cir. 1994); see also Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999)(allowing a finding of state action where a jury could find that actions were 'unlikely to have been undertaken' without state encouragement. The Supreme Court has stated it is ... axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish. Norwood v. Harrison, 413 U.S. 455, 465 (1973). A private party's search may be attributed to the state when the private party acted as an instrument or agent of the Government in conducting the search. Skinner v. Ry. Labor Execs.' Ass'n., 489 U.S. 602, 614 (1989); Reed, 15 F.3d at 931; United States v. Walther, 652 F.2d 788, 791 (9th Cir. 1981). Police officers may be liable for private party's search when the police ordered or were complicit in the search. United States v. Sparks, 265 F.3d 825, 831 (9th Cir. 2001), overruled on other grounds by United States v. Griser, 488

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

F.3d 844 (9th Cir. 2007)(en banc); see also, United States v. Zeigler, 474 F.3d 1184, 1188, 1190 (9th Cir. 2007)(finding state action where an FBI agent told a private employer to make a copy of its employee's computer files)." George v. Edholm, 752 F.3d 1206, 1215 (9th Cir. 2013).

Applying these authorities to the evidence attached hereto, Appendices A - Z1, shows conclusively that ICE used IJM to execute petitioner's arrest despite explicit non-compliance with the Extradition Act nor Fourth Amendment. For these reasons, the Court should find both Bakman and Bassis ineffective under the Sixth Amendment where they failed to properly litigate the seizure of petitioner's person and focused primarily on the search and evidence seized thereafter, vacate the judgment, vacate the denial of the amended motion to suppress, and enter an order granting that motion as a matter of law, or alternatively hold an evidentiary hearing at the earliest opportunity available.

In Indiana v. Edwards, 554 U.S. 164 (2008), the Supreme Court held that a defendant who is competent to stand trial may nonetheless be incompetent to represent himself at trial. Id. at 174 - 178. The biggest concern in Edwards was a court that permits a defendant to represent himself when he lacks the competency to do so would "undercut[] the most basic of the Constitution's criminal law objectives, providing a fair trial." Id. at 176 - 177. Thus, "a trial court may insist on representation for a defendant who is competent to stand trial but who is suffering from severe mental illness to the point where he is not competent to perform the more arduous task of representing himself." United States v. Johnson, 610 F.3d 1138, 1144-1145 (9th Cir. 2010). The Ninth Circuit has "identified several considerations that bear on the Edwards inquiry." United States v. Reed, 918 F.3d 712, 721 (9th Cir. 2019). One critical factor "is the psychiatric evidence. Reports evaluating whether a defendant meets the lesser standard of competency to stand trial 'are of limited value.'" Id. (quoting United States v. Ferguson, 560 F.3d 1060, 1068 (9th Cir. 2009)). However, "reports evaluating whether the defendant can represent himself ... are more helpful." (citing United States v. Thompson, 587 F.3d 1165, 1173 (9th Cir. 2009)). "Another issue is the defendant's behavior. Behavior that is ... disruptive or defiant weighs in favor of appointing counsel." Id.

(6)

Cont'—

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: Conclusion
DATE: 09/28/2021 09:02:17 PM

...

Applying these authorities to the evidence attached hereto, Appendix Z2 as well as the other documents cited above, shows without a doubt that Faerstein's unequivocal position for 5.5 years was not to be disturbed and/or supplanted by an abrupt and scant report by Hope. Appellate counsel's failure to challenge the September 9, 2013 order on these grounds, given the facts and the published precedent above cited, was objectively unreasonable. That deficient performance prejudiced petitioner by depriving him of the strongest argument available under the Fifth Amendment's due process clause with respect to the right to a fair trial and his competency to represent himself on appeal. In other words, there is a strong likelihood that petitioner's convictions would have been vacated and the judgment reversed had appellate counsel advanced the above stated argument on direct appeal. The Court should thus find counsel ineffective under the Sixth Amendment, vacate the judgment, vacate the September 9, 2013 order granting petitioner pro se status, and appoint new defense counsel at the earliest opportunity available, or alternatively hold an evidentiary hearing.

CONCLUSION

   Wherefore petitioner prays that this Honorable Court grants the petition under 28 U.S.C. Section 2255 for the above stated and foregoing reasons.

Respectfully Submitted,

x _____ Date: 9 /29/ 2021

   Mr. Stanley Dan Reczko, III

(7)

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX A COVER SHEET
DATE: 09/21/2021 02:01:06 PM

...

<div align="center">

APPENDIX A
_____

Purviance To Briola Letter May 15, 2007

</div>

*App. – A*



INTERNATIONAL JUSTICE MISSION

May 15, 2007

US Immigrations & Customs Enforcement
Manila, Philippines

Senor Special Agent Briola:

The International Justice Mission® (IJM) is a non-government human rights organization based in the State of Virginia, U.S.A. IJM works worldwide to support government officials and civil society actors to ensure that the most vulnerable members of society have access to the legal justice system. Our office in Cebu, Philippines handles cases involving the trafficking of children for the purpose of sexual exploitation. <u>We would like to refer a case to you of suspected sexual abuse of a minor by a U.S. national.</u>

The following is a summary of the victim's allegation. The suspect is Mr. Stanley "Dan" Reczko, a 42 years old white male, who has had an illicit sexual relationship with a Filipina child, now 17 years old. Their relationship started in 2003 when the child was 13 years old. Mr. Reczko pursued the minor through long distance phone calls from the United States. In 2005, Mr. Reczko came to the Philippines and proposed marriage to the child. By manipulation, they were married even with full knowledge that it is illegal to do so under Philippine law. Prior to the marriage, Mr. Reczko had sex with the child on several occasions. Further, he had the unusual behavior of taking pictures while he was having sex with her, while she was nude, and when she was in her underwear. Mr. Reczko abused the child both physically and verbally. When the child decided to leave Mr. Reczko, in the process of gathering her belongings, she collected some of the pornographic images of herself and turned them over to an IJM Investigator.

In connection with this, we respectfully request your assistance in further investigating this incident and in <u>facilitating the arrest and prosecution of the suspect if so warranted. IJM is currently in contact with the child and she is willing to execute an affidavit against Mr. Reczko.</u> We believe the evidence against Mr. Reczko for abusive sexual conduct against a minor is overwhelming. IJM can provide you with some of evidence necessary to build a strong case against the suspect.

The victim is currently living at a safe-house for sexually abused minors.

*( Need
Affidavit
of
Alledged
Victim*

Sincerely,

Daryl T. Purviance, Director of Investigations
INTERNATIONAL JUSTICE MISSION®
Phone: 32.256.2866 ext 127 Fax: 32.256.2867  — *ALL OFFLENT*
ipurviance@ijm.org

P.O. BOX 192 • CEBU CENTRAL POST OFFICE • PHILIPPINES 6000
PHONE: 63.32.256.2866 • FAX: 63.32.256.2885
www.ijm.org

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
003053

*Raida Yobenciong-Varona, M.D., F.P.O.G.S.*

Obstetrics - Gynecology

Cebu Doctors' Hospital
Osmeña Boulevard, Cebu City
☎ 253-9461

Clinic Hours:
Mon-Sat 10:00 AM - 12:00 NN
Mon-Fri  4:00PM - 6:00PM

Patient _____   Date _5/29/07_

Address _____   Age ___ Sex ___

℞

To all it my concern,

This is to certify

that ████████████ has

Bacterial Vaginitis for

which she given

medication.

_____, M.D.

Lic. No. _____
PTR No. _____
S2 No. _____

CO-AMOXICLAV

Augmentin 1 gram & 625 mg BID

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
003039

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX B COVER SHEET
DATE: 09/21/2021 02:03:41 PM

...

## APPENDIX B
---

B1 - Hotel Letter May 18, 2007 - Cebu Grand

B2 - Hotel Letter May 18, 2007 - Marriot

*App B-2*
*App B-1*
*App B-2 on Back*

**IJM**
INTERNATIONAL
JUSTICE MISSION®

18 May 2007

PO Box 192
GCPO, Cebu City 6000
Philippines

+63.32.256.2866
fax +63.32.256.2885

www.ijm.org

Mr. Fred R. Fajardo
Director, Loss and Prevention Department
Cebu City Marriot Hotel
Cebu Business Park,
Ayala Park, Cebu City

Dear Mr. Fajardo:

The International Justice Mission® (IJM) is a non-government human rights organization based in Virginia, U.S.A, which works to support government officials and civil society actors throughout the world to ensure that the most vulnerable members of society have access to the legal justice system. Our office in Cebu, Philippines, handles cases involving trafficking of children for commercial sexual exploitation.

IJM is currently handling a case of a minor who was sexually abused by a certain Stanley dan Reczko, a 42-year old American national. There is evidence warranting the filing of criminal cases for trafficking, qualified seduction, physical assault and violation of the "Violence Against Women and Children Act" against Mr. dan Reczko. It is also a case covered by the U.S. Protect Act.

From our investigation, we have established that Mr. dan Reczko stayed at your hotel at various periods starting January 2005 to present. We would like, therefore, to request for records, contracts, receipts and papers pertaining to his stay. Further, we request that we be furnished a copy of his telephone records and other relevant documents. We will be using these documents and information in the case build-up.

Your favorable and prompt action shall greatly help the investigation thereby increasing the successful prosecution and conviction of Mr. dan Reczko. All records and information supplied by you shall be endorsed to the United States Department of Homeland Security and U.S. Department of Justice for evaluation and custody.

This request is confidential. Your cooperation and assistance is indeed an answer to the victim's cry for justice.

Sincerely,

Daryl Purviance
Director for Investigations

*App-32*

~~32   on Back~~

**IJM**
INTERNATIONAL
JUSTICE MISSION®

18 May 2007

Mr. Ronaldo Puzon
Operations Manager
Cebu Grand Hotel
N. Escario st., Cebu City

PO Box 192
CCPO, Cebu City 6000
Philippines

+63.32.256.2866
[ fax +63.32.256.2885 ]

www.ijm.org

Dear Mr. Puzon

The International Justice Mission® (IJM) is a non-government human rights organization based in Virginia, U.S.A, which works to support government officials and civil society actors throughout the world to ensure that the most vulnerable members of society have access to the legal justice system. Our office in Cebu, Philippines, handles cases involving trafficking of children for commercial sexual exploitation.

IJM is currently handling a case of a minor who was sexually abused by a certain Stanley dan Reczko, a 42-year old American national. There is evidence warranting the filing of criminal cases for trafficking, qualified seduction, physical assault and violation of the "Violence Against Women and Children Act" against Mr. dan Reczko. It is also a case covered by the U.S. Protect Act.

From our investigation, we have established that Mr. dan Reczko stayed at your hotel at various periods starting January 2005 to present.  We would like, therefore, to request for records, contracts, receipts and papers pertaining to his stay.  Further, we request that we be furnished a copy of his telephone records and other relevant documents. We will be using these documents and information in the case build-up.

Your favorable and prompt action shall greatly help the investigation thereby increasing the successful prosecution and conviction of Mr. dan Reczko. All records and information supplied by you shall be endorsed to the United States Department of Homeland Security and U.S. Department of Justice for evaluation and custody.

This request is confidential. Your cooperation and assistance is indeed an answer to the victim's cry for justice.

Sincerely,

Daryl Purviance
Director for Investigations

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
003055

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX C COVER SHEET
DATE: 09/21/2021 02:05:22 PM

...

<div align="center">

APPENDIX C

———————

Preliminary Report IJM 0002 May 24, 2007

</div>

App - C

IJM RESTRICTED

## INTERNATIONAL JUSTICE MISSION
### PRELIMINARY REPORT

IJM RESTRICTED

| COUNTRY: Republic of the Philippines | | | Incident Number: | | 07-PHC-003 |
|---|---|---|---|---|---|
| Incident Type: | Rape of a Child in Violation of the U.S. Protect Act, 2003 | | Code: | | |
| Incident Date: | December 6, 2005 to May 10, 2007 | | Incident Time: | | |
| Incident Location: | Suba, Pasil, Cebu City, Cebu Philippines | | Grid: | | See Narrative |

| COMPLAINANT | SUCIO, Annie | | | Ethnicity: | | | Filipino |
|---|---|---|---|---|---|---|---|
| Address: | Department of Social and Welfare Services (DSWS) | | | | | | |
| | Barangay Labangon, Cebu City, Cebu Philippines | | Tel: | +63.32.262.5163 | | DOB/Age: | 10/31/1966 |

| VICTIM 1 | | | | | Ethnicity: | | Filipino |
|---|---|---|---|---|---|---|---|
| Address: | Block #3 Missionary Street, Suba, Pasil | | | | | | |
| | ███████ | | Tel: | ███████ | | DOB/Age: | ███████ |
| Injuries: | See Narrative | | | | | | |

| VICTIM 2 | N/A | | | | Ethnicity: | | |
|---|---|---|---|---|---|---|---|
| Address: | | | Tel: | | | DOB/Age: | |
| Injuries: | | | | | | | |

| SUSPECT 1 | RECZKO, Stanley "Dan" | | | | Ethnicity: | | Caucasian |
|---|---|---|---|---|---|---|---|
| Address: | Mike & Tess Apartelle, Door #1, Salvador Extension | | | | | | |
| | Labangon, Cebu City, Cebu Philippines 6000 | | Tel: | +63.916.949.5838 | | DOB/Age: | 10/20/1964 |
| Sex: | Male | Race: | White | | Facial Hair: | | Mustache |
| Hair Color: | Light Brown | Height: | 6'01" | | Glasses: | | None seen |
| Clothing: | | Weight: | 225 lbs. | | Build: | | Medium-Heavy |
| Description: | Tattoos – Chinese letters on chest, | | | | | | |

| SUSPECT 2 | N/A | | | | Ethnicity: | | |
|---|---|---|---|---|---|---|---|
| Address: | | | Tel: | | | DOB/Age: | |
| Sex: | | Race: | | | Facial Hair: | | |
| Hair Color: | | Height: | | | Glasses: | | |
| Clothing: | | Weight: | | | Build: | | |
| Description: | | | | | | | |

| WITNESS 1 | ███████ | | | | Ethnicity: | | Filipino |
|---|---|---|---|---|---|---|---|
| Address: | ███████ | | Tel: | ███ | | DOB/Age: | ███ |

| WITNESS 2 | ███████ | | | | Ethnicity: | | Filipino |
|---|---|---|---|---|---|---|---|
| Address: | ███████ | | Tel: | | | DOB/Age: | ███ |

| WITNESS 3 | ███████ | | | | Ethnicity: | | Filipino |
|---|---|---|---|---|---|---|---|
| Address: | ███████ | | Tel: | ███ | | DOB/Age: | ███ |

| IJM Employee: | L. BALDADO, Investigator | Signature: | *[signature]* | Date: | 05/24/2007 |
|---|---|---|---|---|---|
| Approved: | D. PURVIANCE, DOI | Signature: | *[signature]* | Date: | *[handwritten]* |

IJM-Cebu OFP
Preliminary Report – Page 1 of 12

IJM RESTRICTED

IJM0002

IJM Protected

(14)

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX D COVER SHEET
DATE: 09/21/2021 02:06:53 PM

...

## APPENDIX D

Perpetrator Accountability January 10, 2008

*APP - D*

# LOCAL, INTERNATIONAL LAW ENFORCEMENT COOPERATION BUILDS PERPETRATOR ACCOUNTABILITY IN SOUTHEAST ASIA

`[PRINT]`

Thursday, 10 January 2008

An IJM investigation in conjunction with local police has prompted the arrest of an American for his abuse of a minor in the Philippines. The 43-year-old man, a convicted sex offender in the U.S., is accused of sexually abusing a Filipina adolescent over a three-year period, beginning when the victim was 14.

IJM investigative staff in the Philippines received a tip that an American expatriate had habitually sexually abused a young teen for over three years and had gone so far as to illegally "marry" the victim when she was 15 in an attempt to legitimate his abuse. After preparing an initial investigation report, IJM worked closely with Philippine and U.S. authorities to locate the perpetrator under the auspices of the PROTECT Act, the U.S. law that makes sexual offenses committed against minors abroad by American citizens punishable in U.S. courts. Presented with documentation of the suspect's sexual abuse of a minor, the Philippines Bureau of Immigration issued an order for his arrest in June.

However, the suspect was tipped off that police were looking for him and subsequently fled to an island several hours away. Despite his attempts at evasion, IJM investigators were able to track him down and resume surveillance. With confirmation that he was still at large, the Bureau of Immigration worked in collaboration with local police to arrest him.

After his arrest, the suspect and investigators traveled nearly five hours to return to the immigration office police station, where he was booked into immigration custody pending deportation.

In September, the suspect was deported to the U.S., where he was arrested upon arrival and charged under the PROTECT Act.

"These cases are critically important to demonstrate to pedophiles that there are no 'safe harbors' left in the world for the sexual exploitation of children," explains IJM Southeast Asia Director Kaign Christy.

The victim has been placed in a safe aftercare home, where she is doing well. She is taking tutorial classes to prepare for her upcoming educational exams and will enroll in computer training courses.

Close Window

International Justice Mission

Notes To Financial Statements

Note 1.    Nature Of Activities And Significant Accounting Policies

Nature of activities:  International Justice Mission (the Organization) is a not-for-profit organization founded on May 19, 1994, in the state of Virginia.  The Organization is a Christian agency that seeks to advance the Scriptural mandate to help people who are suffering injustice and oppression.  The primary activities of the Organization are to document human rights abuses abroad, to educate the Christian church and the general public about such abuses and the need for the church to respond and to mobilize intervention on behalf of the victims of these abuses.

A summary of the Organization's significant accounting policies follows:

Basis of accounting:  The accompanying financial statements are presented in accordance with the accrual basis of accounting, whereby support and revenue is recognized when earned and expenses are recognized when incurred.

Basis of presentation:  The financial statement presentation follows the recommendations of the Financial Accounting Standards Board in its Statement of Financial Accounting Standards (SFAS) No. 117, *Financial Statements of Not-for-Profit Organizations*.  Under SFAS No. 117, the Organization is required to report information regarding its financial position and activities according to three classes of net assets: unrestricted net assets, temporarily restricted net assets, and permanently restricted net assets.  The Organization has no permanently restricted net assets at December 31, 2007.

Cash and cash equivalents:  For purposes of reporting cash flows, the Organization considers all investments purchased with a maturity of three months or less to be cash equivalents.  All cash and investments, regardless of maturity, held by an investment advisor, are considered investments.

Due to the nature of the Organization, the Organization uses investments with a maturity of less than three months.  The Organization has operations in many countries and many transactions have been performed using cash.  In addition, the field offices receive cash in advance for their operations.

Financial risk:  The Organization maintains its cash in bank deposit accounts, which, at times, may exceed federally insured limits.  The Organization has not experienced any losses in such accounts.  The Organization believes it is not exposed to any significant financial risk on cash.

The Organization invests in a professionally managed portfolio that contains equity securities, money market funds, and certificates of deposit.  Such investments are exposed to various risks such as market and credit.  Due to the level of risk associated with such investments, and the level of uncertainty related to changes in the value of such investments, it is at least reasonably possible that changes in risks in the near term could materially affect investment balances and the amounts reported in the financial statements.

Restricted cash:  Cash and cash equivalents at December 31, 2007, includes certificates of deposit in the amount of $275,348, which are restricted as security under two letters of credit with a local bank.

Investments:  Investments consist of certificates of deposit, equity securities, and money market funds and are reflected at fair market value.  To adjust the carrying value of these investments, the change in fair market value is included as a component of investment income on the statement of activities.

Receivables:  Receivables are carried at original invoice amount less an estimate made for doubtful receivables based on a review of all outstanding amounts on a monthly basis.  Management determines the allowance for doubtful accounts by regularly evaluating individual customer receivables and considering a customer's financial condition, credit history, and current economic conditions.  Receivables are written off when deemed uncollectible.  Recoveries of receivables previously written off are recorded when received.  There is no provision for doubtful accounts at December 31, 2007.

6

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX E COVER SHEET
DATE: 09/21/2021 02:08:47 PM

...

<div align="center">

APPENDIX E
_____

Project Lantern - ICE Agent Briola Notified - May 24, 2007

</div>

IJM RESTRICTED                                              Incident Number: 07-PHC-003

| Project Lantern Data: | | |
|---|---|---|
| What was the total number of persons *not* affiliated with a commercial sex establishment but were offering minor sex-trafficking victims? | | 0 |
| In how many instances did the facilitator, victim, or commercial sex worker cite law enforcement as a reason minors were not available? | | 0 |
| How many sex-trafficking perpetrators were identified? | | 1 |
| How many sex-trafficking arrests were made? | | 0 |

| Establishment | Type | Number of minor victims | Number of adult victims | Total number of sex-workers | Sex-act Offered | Price |
|---|---|---|---|---|---|---|
| N/A | | 1 | | | | N/A |
| | | | | | | |

| Establishment | Security (list all security measures in place for each establishment) |
|---|---|
| N/A | |
| | |

| Authorities Notified: | | Agencies Notified: | | |
|---|---|---|---|---|
| Name of Official: | Special Agent Julian S. BRIOLA | UNICEF | ICRC | ILO |
| Rank of Official: | Senior Special Agent | UNESCO | WHO | WTO |
| Date & Time Notified: | 05/11/2007 1400 hours | OECD | Other: | X U.S. ICE |
| Name of Local Station: | U.S. Embassy, Manila | Chief of Police: | | |
| Organization: | U.S. Immigration and Customs Enforcement | National | Local | Other X |

*"U.S."*
*REFERRAL*

IJM Action Taken:

1.  Investigations Team accepted the case referral.
2.  Aftercare and Investigations Teams interviewed Victim ██████████
3.  Aftercare and Investigations Teams re-located Victim ████████████ to a safe house
4.  Investigations Team conducted a criminal investigation
5.  Legal Team drafted case correspondence and provided legal consultation to the Investigations Team
6.  Investigations Team notified, gained the support of, and mobilized the U.S. Immigrations and Customs Enforcement (ICE), Manila, to act on behalf of Victim ██████████
7.  Investigations Team turned all evidence items over the custody of U.S. ICE, Manila.

| Follow up Required? | Yes | Non-compliance issues: (Please describe) | | |
|---|---|---|---|---|
| Assigned To: | L. BALDADO | | | |
| Date: | 05/10/2007 | | | |
| Other Reports Attached: | | | | |
| Case Status: | Open | X | Inactive | Closed |

| IJM Employee: | L. BALDADO, Investigator | Signature: | *L. Baldado* | Date: | 05/24/2007 |
|---|---|---|---|---|---|
| Approved: | D. PURVIANCE, DOI | Signature: | | Date: | |

IJM Cebu OFP
Preliminary Report - Page 2 of 12                IJM RESTRICTED

IJM0003

IJM Protected

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

----------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX F COVER SHEET
DATE: 09/21/2021 02:11:33 PM

...

<div align="center">

APPENDIX F
_____

June 1, 2007 Unsigned/Unfiled/Unauthenticated/Fabricated Indictment

</div>

*App F*

*page 1 of 5*

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                          June 2007 Grand Jury

11    UNITED STATES OF AMERICA,      )    CR No. 07-_____
                                     )
12                    Plaintiff,     )    I N D I C T M E N T
                                     )
13             v.                    )    [18 U.S.C. § 2423(b): Travel
                                     )    with Intent to Engage in
14    STANLEY DAN RECZKO, III,       )    Illicit Sexual Conduct;
                                     )    18 U.S.C. § 2423(c): Engaging
15                    Defendant.     )    in Illicit Sexual Conduct in
                                     )    Foreign Places; 18 U.S.C.
16                                   )    § 2260A: Penalties for
                                     )    Registered Sex Offenders]
17    _____ )

18

19         The Grand Jury charges:

20                              COUNT ONE

21                    [18 U.S.C. §§ 2423(b), 2260A]

22         On or about November 20, 2005, in Los Angeles County, within

23    the Central District of California, and elsewhere, defendant

24    STANLEY DAN RECZKO, III, a United States citizen and a person

25    registered as a sex offender, knowingly traveled in foreign

26    commerce, namely from Los Angeles, California, to the

27    Philippines, for the purpose of engaging in illicit sexual

28    conduct, as defined in Title 18, United States Code,

      Section 2423(f), with a person under 18 years of age.

JJL:jjl

(20)

COUNT TWO

[18 U.S.C. §§ 2423(b), 2260A]

On or about January 20, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant STANLEY DAN RECZKO, III, a United States citizen and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California, to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

2

(21)

COUNT THREE

[18 U.S.C. §§ 2423(b), 2260A]

On or about November 9, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant STANLEY DAN RECZKO, III, a United States citizen and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California, to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

(22)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FOUR

[18 U.S.C. §§ 2423(b), 2260A]

On or about March 14, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant STANLEY DAN RECZKO, III, a United States citizen and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California, to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

4

(23)

COUNT FIVE

[18 U.S.C. §§ 2423(c), 2260A]

Between on or about November 22, 2005, and on or about April 27, 2007, defendant STANLEY DAN RECZKO, III, a citizen of the United States residing in Los Angeles, California, within the Central District of California, and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California to the Philippines, and engaged in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

A TRUE BILL

_____

Foreperson

THOMAS P. O'BRIEN
United States Attorney


CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Violent and Organized Crime Section

DANIEL A. SAUNDERS
Assistant United States Attorney
Deputy Chief, Violent and Organized Crime Section

JOHN J. LULEJIAN
Assistant United States Attorney
Violent and Organized Crime Section

5

(24)

# ERRATA SHEET

Pursuant to the Federal Rules of Procedure and the California Code of Civil Procedure, any changes in form or substance you wish to make to your deposition testimony shall be included in the deposition transcript. Should you have any corrections, please enter them below.

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

PAGE _____   LINE _____

                                 CHANGE: _____

                                 REASON: _____

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX G COVER SHEET
DATE: 09/21/2021 02:14:08 PM

...

APPENDIX G
_____

U.S. ICE Letter Written By Agent Briola For Theodore Lopez June 12, 2007

(25)



App G
page 1 of 2

U.S. Dep.    ent of Homeland Security
ICE Attaché, U.S. Embassy - Manila
1201 Roxas Blvd., Ermita
Manila 1000, Philippines

**U.S. Immigration
and Customs
Enforcement**

June 12, 2007

Hon. Marcelino Libanan, Commissioner
Bureau of Immigration
Magallanes Drive, Intramuros
Manila 1002, Philippines

RE:  Stanley RECZKO, American, U.S. Passport # 104888706, Report of Rape of Child

Dear Sir:

The U.S. Department of Homeland Security, Immigration and Customs Enforcement
(DHS/ICE) of the U.S. Embassy in Manila is authorized to conduct investigations on American
citizens and lawful residents of the United States who violate the Child Protect Act.  The Act
was put into law in 2003 and was aimed at assisting law enforcement in the investigation and
arrest of child predators, pedophiles, human traffickers of minors for prostitution and sex
tourism.  This law can also lead to the U.S. prosecution of Americans and U.S. lawful
residents who violate the law in a foreign country.

On May 23, 2007, our office received information from a credible source indicating that an
American, Stanley RECZKO, entered the Philippines sometime in March 2007 and became
involved in a sexual, physical and verbally abusive relationship with a 17 year-old Philippine
female alleged to be his wife.  It is our understanding that under Philippine law a minor cannot
legally marry in the Philippines.  It is presumed that RECZKO has been having sex with the
Filipina for over 2 years, since the age of 15.  Subsequent investigation by our office reveals
RECZKO is not married to the Filipino girl and that the marital ceremony performed was faked
by RECZKO in order to fool the parents and the girl.  Additional information received
indicated that RECZKO has a previous U.S. conviction for Rape of a Child (14 year-old).
Details are enclosed under separate cover.  Current information indicates that RECZKO has
been harassing the girl's family after she was placed in a "safe-house".

ICE Attaché Manila is providing this information to your office to act upon accordingly and as
you deem appropriate.  Attached is a copy of the arrest and conviction details of Stanley
RECZKO.

Although the above information is unclassified, it is strictly law enforcement sensitive. The
point of contact will be Immigration and Customs Enforcement, Sr. Special Agent Julian
Briola, who can be reached at, cell no. 0917-830-2336.

www.ice.gov

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005683

USA_05683

(26)

SUBJECT: Stanley RECZKO, . .merican, Child Rape
Page 2

Respectfully,

Theodore C. Lopez
Deputy ICE Attaché

Cc: Atty. Gary Mendoza, BID
    Atty. Roy Almoro, Associate Commissioner

Enclosures:  Bio data sheet of Stanley RECZKO

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005684

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

-----------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX H COVER SHEET
DATE: 09/21/2021 02:16:29 PM

...

## APPENDIX H
_____

Fax From Attorney Edgardo Mendoza To ICE Agent Briola June 20, 2007



REPUBLIC OF THE PHILIPPINES
DEPARTMENT OF JUSTICE
**BUREAU OF IMMIGRATION**
MAGALLANES DRIVE, INTRAMUROS
1002 MANILA

*App - H*

MEMORANDUM

FOR   :   **ATTY. FAIZAL HUSSIN**
              **Chief, Intelligence Division**

FROM  :   **THE CHIEF**
              **Immigration Regulation Division**

DATE  :   **20 June 2007**

x--------------------------------------------------------------x

     Respectfully forwarding for your appropriate action the herein letter of Theodore C. Lopez, Deputy Immigration and Customs Enforcement Attaché, US Department of Homeland Security, regarding the case Mr. Stanley Reczko, American national, who is involved in a sexual, physical and verbally abusive relationship with a 17 year-old Philippine female alleged to be his wife.

**ATTY. EDGARDO L. MENDOZA**

Dear Julian,
The copy for the Commissioner
sent to his Office June 12, 2007.

IDD
EDM/mm

DEAR JULIAN
THE COPY FOR
THE COMMISIONER
WAS SENT TO HIS
OFFICE JUNE 12,
2007.

STANLEY DAM RECZKO

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
007016

USA_07016

(29)

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

----------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX I COVER SHEET
DATE: 09/21/2021 02:21:28 PM

...

APPENDIX I
_____

Mission Order Used To Effectuate Arrest June 22, 2007;

Identifies Reczko As Fugitive From Justice;

Was valid from June 22, 2007-June 29, 2007;

Required Strict Compliance, And A Report & Recommendation;

(Actual Arrest Took Place On July 2, 2007)

App - I



Republic of the Philippines
Department of Justice
BUREAU OF IMMIGRATION
1002 Manila

MISSION ORDER NO. MCL-07- 008

TO          ATTY. FAIZAL U. HUSSIN
            Chief, Intelligence Division
            And Any Available Agent

SUBJECT     STANLEY RECZKO
            U.S. national

AREA        Cebu City
            OR WHEREVER FOUND

DATE        Valid upon date of Approval    (22 June 2007) /8

1. Conduct verification/validation on the admission status and activities of
   said foreign national and effect the immediate arrest if found to have
   violated the Philippine Immigration Act of 1940, as amended.

2. Valid for seven (7) days from date of approval.

3. Submit after Mission report and recommendation.

4. For strict compliance.

MARCELINO C. LIBANAN
Commissioner

CERTIFIED TRUE COPY
BI - INTELLIGENCE
CERTIFIED BY

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
007017

(31)

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX J COVER SHEET
DATE: 09/21/2021 02:24:06 PM

...

## APPENDIX J

Philippine Bureau of Immigration Memorandum Under 1940 Immigration Act December 15, 2008



*App J*
*page (1) f (4)*



orig,
origi

Republic of the Philippines
DEPARTMENT OF JUSTICE
**BUREAU OF IMMIGRATION**
Magallanes Drive, Intramuros
1002 Manila



07 December 2006

MEMORANDUM ORDER No.  AFF-2006-  021

*Further Amendment to the Additional Rules to Supplement
Disposition of Deportation Cases under Memorandum
Order No. ADD-01-035 dated 22 August 2001*

In compliance with the Memorandum from the Secretary of the Department of Justice dated 24 November 2006 requiring the Bureau of Immigration (BI) to immediately undertake the necessary changes in its rules of procedure concerning summary deportation to ensure that the law is complied with and the procedure is regular and above board, amended Rule VII-a of the Revised Rules for Deportation Proceedings under Memorandum Order No. ADD-01-035 dated 22 August 2001, is further amended as follows:

"**Rule VII-a.**   *Summary deportation. Duty of special prosecutor. Duty of the Intelligence Division. Duty of Board of Special Inquiry.* -- Summary deportation shall apply where the alien is overstaying, undocumented, improperly documented, a fugitive from justice or is in violation of the terms and conditions of his release on bond or recognizance.  In any of these instances, the Special Prosecutor shall immediately prepare charges which shall be subscribed before the Executive Director.

The Special Prosecutor shall then transmit a certified true copy of the charge sheet to the BI-Intelligence Division, which shall be tasked to procure the necessary clearances for deportation from the National Bureau of Investigation (NBI), Philippine National Police  (PNP) and regular courts and/or other clearances/documents relative to the deportation case.

The Intelligence Division, which shall be authorized to receive and certify that said clearances for deportation are genuine and authentic from the original copies received from the requested agencies, shall submit and officially transmit in writing the original and certified true copies of said clearances to the Board of Special Inquiry/Special Task Force for consolidation in the deportation records.

Said clearances, *inter alia*, shall be considered by the Board of Commissioners in determining whether there is factual basis for the issuance or non-issuance of a summary deportation order. The order shall clearly and distinctly state the facts and the law on which it is based.

However, if there is a material lapse of time from the issuance of clearances for deportation and the respondent's *actual* deportation and there is reasonable ground to believe that the latter maybe facing case(s) that arose after the issuance of the previous clearances, new clearances for deportation shall be required by the Special Prosecutor".

*( 33 )*

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005780

 

*Embassy of the United States of America*

*Manila, Philippines*

Republic of the Philippines )
City of Manila )
Embassy of the United States )
   of America ) ss:

     I certify that the attached document is a true and faithful copy of the original, and that it has been carefully examined by me, compared with the said original, and found to agree with it word for word and figure for figure.

Lisa A. Mooty
Vice Consul of the
United States  of America
Indefinite Commission

January 13, 2009
      Date

(34)

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005779

Page 2
Memo Order No. AFF-2006-____
Amendment to Additional Rules to Supplement
Disposition of Deportation Cases

All rules and regulations or parts thereof inconsistent with this Memorandum Order are hereby repealed or amended accordingly.

Copies of Memorandum Order No. ADD-01-004 dated 07 June 2001, Memorandum Order No. ADD-01-031 dated 06 August 2001 and Memorandum Order No. ADD-01-035 dated 22 August 2001 are hereto attached as Annexes "A", "B" and "C", respectively, for reference purposes.

This amendment shall take effect immediately.

ALIPIO F. FERNANDEZ, JR.
Commissioner

Copy furnished:

1. Secretary, Department of Justice;
2. Board of Commissioners, this Bureau;
3. Office of the Executive Director, this Bureau;
4. Law and Investigation Division, this Bureau;
5. Intelligence Division, this Bureau;
6. Board of Special Inquiry, this Bureau;
7. Civil Security Unit, this Bureau;
8. Administrative Division, this Bureau;
9. Special Task Force, this Bureau;
10. U.P. Law Center, Diliman, Quezon City.

LAW & INVESTIGATION DIVISION
CERTIFIED TRUE COPY

By: _____
Date: DEC 1 5 2008

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005781

Republic of the Philippines
Department of Justice
BUREAU OF IMMIGRATION
Manila



August 22, 2001

MEMORANDUM ORDER No. ADD-01___035___

Amendment to Additional Rules to Supplement Disposition of Deportation Cases

Memorandum Order No. ADD-01-031, Rule VII.a, dated 6 August 2001 is hereby amended as follows

"Rule VII-a. *Summary deportation. Duty of special prosecutor. Duty of Board of Special Inquiry.* – Summary deportation shall apply where the alien is overstaying, undocumented, improperly documented, a fugitive from justice or is in violation of the terms and conditions of this release on bond or recognizance. In any of these instances, the Special Prosecutor shall, within a period of 24 hours upon receipt of the records, prepare written memorandum that recommends summary proceedings. Upon receipt of such memorandum, the Board of Special Inquiry shall immediately prepare the Summary Deportation Order for the Board of Commissioners."

This amendment shall take effect immediately.

ANDREA D. DOMINGO
Commissioner

Cc:     All concerned
        U.P. Law Center

LAW & INVESTIGATION DIVISION
CERTIFIED TRUE COPY

By: _____
Date: __DEC. 1 2008__

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005782

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX K COVER SHEET
DATE: 09/21/2021 02:29:04 PM

...

<div align="center">

APPENDIX K

_____

Photograph of Reczko, IJM Agent Mosier, IJM Agent Purviance, and Rosas BI Commissioner

On July 3, 2007 Morning After Unreasonable Seizure on July 2, 2007

(SEE RECZKO IN HANDCUFFS)

</div>

IJM_MDC_PROD_1740

App-K



TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX L COVER SHEET
DATE: 09/21/2021 02:35:02 PM

...

### APPENDIX L

Photograph of Attorney Edgardo Mendoza, Chief Philippine Bureau of Immigration Attorney,

Various Philippine Immigration Officers, And Reczko On July 3, 2007 In Manila, Philippines

Mendoza Has Telephone COnversation With ICE Agent Briola About IJM Agents Purviance and Mosier

Taking Reczko's Passport, Money, And Personal Effects On July 2, 2007

(SEE RECZKO WITHOUT HANDCUFFS)



IJM_MDC_PROD_1741

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX M COVER SHEET
DATE: 09/21/2021 02:36:32 PM

...

APPENDIX M
_____

Follow-up Report IJM - July 5, 2007

(41)

*APP - M*

IJM RESTRICTED   INTERNATIONAL JUSTICE MISSION   IJM RESTRICTED
FOLLOW-UP REPORT

Republic of the Philippines, Cebu OFP                           Report Number: 07-PHC-003

| Project Launch Date | | | | | | |
|---|---|---|---|---|---|---|
| What was the total number of persons *not* affiliated with a commercial sex establishment but were offering minor sex-trafficking victims? | | | | | | |
| In how many instances did the facilitator, victim, or commercial sex worker cite law enforcement as a reason minors were not available? | | | | | | |
| How many sex-trafficking perpetrators were identified? | | | | | | |
| How many sex-trafficking arrests were made? | | | | | | |
| Establishment | Type | Number of minor victims | Number of adult victims | Total number of sex workers | Sex act Offered | Price |
| | | | | | | |
| | | | | | | |

| Establishment | Security (list all security measures in place for each establishment) |
|---|---|
| | |
| | |

### Narrative:

On Sunday July 01, 2007, IJM Investigator Mark ALBO notified me of a possible lead on the whereabouts of Suspect Stanley D. RECZKO. It was suspected that RECZKO was now staying in a hotel in Dumaguete City, Negros. I asked Investigator ALBO and IJM Investigator Lisa BALDADO to go to there and confirm the report if possible.

By late Sunday evening, ALBO and BALDADO notified me that they had located RECZKO. They continued their surveillance at the hotel.

On Monday, July 02, 2007 at approximately 0730, I notified Bureau of Immigrations Intelligence Officer Dino S. MONTOR by phone that we had located RECZKO. I provided him with very little information and asked him to meet me at the IJM Cebu office. He arrived at 0830 hours and I explained what we had learned.

Investigative Assistant Ana BUNGCARAS called PSupt Dionardo CARLO, PNP Chief of Dumaguete City. I asked Officer MONTOR to speak with him while we faxed the Bureau of Immigration mission order to the Chief authorizing RECZKO's arrest. MONTOR agreed and we immediately faxed the order to Chief CARLO.

At approximately 1000 hours, ALBO notified me by phone that RECZKO was in custody.

According to Chief CARLO, he could hold RECZKO for a maximum of 8 hours. If the Bureau of Immigrations did not take custody of him by then, he would have to release him.

VP MOSIER and I immediately left for Dumaguete City with Officer MONTOR and 2 other Bureau of Immigrations Officers. We arrived at the Dumaguete PNP office at approximately 1615 hours. RECZKO was being held inside an upstairs office.

As RECZKO was being transferred to the custody of Immigrations, I inquired about his mobile phone. PNP PO3 Liberato D. FAELOGO (DOB 03-15-66) handed me RECZKO's phone and what appeared to be a shredded plastic

| IJM Employee: | Daryl T. PURVIANCE, DOI | Signature: | | Date: | 07-05-2007 |
|---|---|---|---|---|---|
| Approved: | Daryl T. PURVIANCE, DOI | Signature: | | Date: | 07-05-2007 |

IJM Cebu OFP
Follow-Up Report—Page 1 of 2                    IJM RESTRICTED

IJM Protected

IJM0715

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
011762

(42)

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX N COVER SHEET
DATE: 09/21/2021 02:39:52 PM

...

## APPENDIX N

N1 - Letters by Mosier To Libanan, Philippine Commissioner - August 8, 2007

N2 - Letters by Mosier To Calderon, Philippine National Police Chief - August 8, 2007

*App-N-1*



## International Justice Mission

Commissioner Marcelino C. Libanan,
Bureau of Immigration and Deportation
4th Floor BF Condominium
Soriano St., Cor. Solana St.
Intramuros, Manila
Philippines

08 August 2007

Dear Commissioner Libanan,

I am writing this letter in support of immigration officers assigned to the Central Visayas
Region in connection with the arrest of a US national named Stanley D. REZCKO.

REZCKO has been identified by the State of New York in the United States as a sexually
violent offender and, as you know, the US Department of Homeland Security had requested
that REZCKO be deported from the Philippines based on information received from IJM
that he was involved with the child sexual exploitation of a Filipina.

An order issued by your office authorizing the arrest and detention of REZCKO was
forwarded to the Bureau of Immigration office in Mandaue City. The agents and intelligence
officers assigned immediately began attempts to locate the subject, but to no avail. The BI
contacted IJM and a collaborative investigation ensued to locate the subject.

*WHERE IS
THE ORDER?*

IJM worked closely with Mr. Ramon Ugarte, Mr. Mabett Impas, Jr., and Mr. Dilausan Montor,
requiring many hours of mobile and fixed surveillance that were necessary, but initially
unfruitful. The investigation took a positive turn and the location of the subject was verified.
These officials contacted their relevant law enforcement counterparts in Dumagete City on
the island of Negros, resulting in the arrest of REZCKO without major incident.

We greatly appreciated the dedication of these officials and their willingness to follow through
on any investigative lead and exhaust the many potential avenues of investigation.

The Bureau of Immigration officials who participated in this investigation and apprehension
are to be commended for their commitment to professionalism in this case.

Sincerely,

Robert P. Mosier
Director of Investigations

Post Office Box 58147 Washington, D.C. 20037 U.S.A. Telephone 703-465-5495 Facsimile 703-465-5499

IJM Protected

IJM0103

(44)



*App N-2*
*page 1 of 2*

### International Justice Mission

Oscar Castelo Calderon
Police Director General; The Chief, Philippine National Police
Office of the Chief, Philippine National Police
Camp Crame, Quezon City
Philippines

08 August 2007

Dear Director General Calderon,

I should first congratulate you on your promotion to Director General of the Philippine National Police.

I apologize in advance for the length of this letter, but wanted to take this opportunity to write to you about the excellent work some of your officers are doing in the field.

Our staff in the Central Visayas region recently worked with members of the Philippine National Police in the apprehension of a U.S. national named Stanley D. RECZKO. After having been classified as a sexually violent offender by the State of New York in the United States, RECZKO had relocated to the Philippines and became involved in the child sexual exploitation of a Filipina. When learned, this information was passed on to the relevant Philippine authorities, who responded quickly and arrested RECZKO without major incident. I credit the suspect's successful apprehension to the professionalism and leadership of your commanding officers in the Central Visayas region.

I would first like to recognize the efforts of Police Superintendent Dionardo B. Carlos who is the Police Chief for the Dumaguete Police Station for the Negros Oriental Provincial Police Office. RECZKO initially fled to Negros in hopes of evading authorities, but the buck stopped there due to Police Superintendent Carlos's good work. Upon being notified that RECZKO was a fugitive, Police Superintendent Carlos immediately took proactive measures to secure the perimeter of the hotel where the suspect was staying with a woman and a young child. Police Superintendent Carlos initiated a fixed surveillance with an arrest team in the event the suspect exited the hotel. The suspect, being aware that he was wanted, was very careful not expose himself to law enforcement. After some 18 hours the suspect exited the hotel alone and was confronted and initially invited to the Dumaguete Police Station. The suspect then fled on foot and, after a brief foot chase, physically assaulted an officer. The remaining officers demonstrated a show of force, using only the amount of force necessary to overcome the resistance, and took RECZKO into custody without injury or further incident.

IJM Protected

Post Office Box 58147 Washington, D.C. 20037 U.S.A. Telephone 703-465-5495 Facsimile 703-465-5499

IJM0104

(45)

The tactics employed during the operation, particularly the use of restraint, demonstrated the training initiatives undertaken by the Philippine National Police and the effectiveness of Police Superintendent Renato R. Dugan, Chief, Human Resource Development Section, Regional Personnel and Human Resource Development Division for Region VII. This Police Superintendent's work on PNP officer training initiatives clearly prepared these officers to respond quickly and to effectively handle a potentially dangerous situation with professional tactics.

I would also like to commend the former Director of Police for Region VII, Chief Superintendent Silverio Dionio Alarcio Jr., CS EE for his success in supporting these officers who exhibited a high level of dedication to justice. In each instance throughout this investigation, when members of IJM made contact with the Philippine National Police in Cebu and Negros, the officers with whom we interacted responded with dedication and commitment to take the appropriate action. I believe this kind of effective response is due in great part to positive, empowering leadership. For that, I would like to thank Chief Superintendent Silverio Dionio Alarcio Jr.

In these times of uncertainty and terror, we are grateful to have had the opportunity to work with officers who demonstrate such a genuine commitment to the safety and security of citizens. It is because of the excellent leadership and training of Police Superintendent Dionardo B. Carlos and his officers in the Central Visayas region that this sexually violent offender RECZKO has been removed from the streets of Dumaguete thereby making it a safer place for all.

In closing, I would like to mention that I sometimes travel to the Philippines and look forward to the opportunity to meet with you personally.

With Best Regards,

Robert R. Mosier
Director of Investigations

IJM Protected

IJM0105

(46)

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX O COVER SHEET
DATE: 09/21/2021 02:41:41 PM

...

APPENDIX O

---

Philippine Bureau of Immigration Summary Deportation Order August 17, 2007